No. 34,292·

Lilia (Quapaw) Hanson, *Appellee,* v. Agnes Quapaw Hoffman; Jean Ann Quapaw Hoffman, a Minor; Henry E. Hoffman, Guardian of Jean Ann Quapaw Hoffman, a Minor; and M. T. Long, doing business as The Long Motor Company, *Appellants.*

(91 P. 2d 31)

Opinion filed June 10, 1939.

*F. W. Boss, Marc Boss,* both of Columbus, *Vern E. Thompson, Loyd E. Roberts,* both of Joplin, Mo., and *Byron Hoffman,* of Miami, Okla., for the appellants.

*Fred A. Walker,* of Columbus, and *Dick Rice,* of Miami, Okla., for the appellee.

The opinion of the court was delivered by

Allen, J.: This action was to recover possession and to quiet title to lot 4, block 7, Baxter Springs, Cherokee county, Kansas. The appeal is from a judgment overruling a demurrer to the petition.

The petition alleged: That Benjamin Quapaw, a full-blood Quapaw Indian, died in May, 1926, a resident of Ottawa county, Oklahoma; that plaintiff is a daughter by blood of the deceased Benjamin; that the defendants Agnes Quapaw Hoffman and Jean Ann Quapaw Hoffman are devisees and legatees under his last will. The defendant, Long, is in possession of the property, and the other defendant is guardian of the minor defendant Jean Ann.

It was further alleged that Benjamin Quapaw owned allotted and allotted inherited land in Ottawa county, Oklahoma. These lands were restricted against alienation; the restrictions on alienation were removed by the act of congress approved June 7, 1897, to the extent

that the allottee was empowered to lease such lands for farming and mining purposes. In 1915 Benjamin Quapaw, joined by his wife, See-Saw, gave a mining lease on these allotted lands; that lead and zinc mines were developed thereon; that Benjamin Quapaw collected as mining royalties therefrom the sum of $179,084, which came into his hands unrestricted and free from governmental control; that the land here in dispute was bought and the purchase price paid out of such unrestricted royalties. The deed was made to Benjamin Quapaw and See-Saw Quapaw, his wife, and the deed was duly recorded in Cherokee county. See-Saw died intestate in 1920, leaving Benjamin as her sole heir, who inherited her interest in lot 4, block 7, Baxter Springs, here in question.

The petition sets out the act of congress of June 25, 1910, as amended by the act of congress approved February 14, 1913, which authorized the owner of restricted land, under the regulations of the secretary of the interior to dispose of such lands by will; on October 28, 1924, Benjamin Quapaw executed a will disposing of his entire estate, including restricted and unrestricted lands, to the defendants Agnes and Jean Ann. Plaintiff alleges that the pretended will is void; that under the acts of congress he was not authorized to dispose of his unrestricted land by will; that he was mentally incompetent to make a will and that the will was not executed according to law.

The petition alleged:

"Plaintiff alleges that at the time her father executed said will hereto attached, marked exhibit 'B,' the plaintiff was his child and her whereabouts were unknown; that she was lost to her said father; reported to be dead and was absent, and that plaintiff, his child, was not named or provided for in said will, and that under the provisions of section 22-243, Revised Statutes of Kansas 1923, which were in force and effect at the date of her father's death, her said father died intestate as provided by the Kansas law.

"That after the date the title to said unrestricted real estate vested in Benjamin Quapaw as aforesaid, the secretary of the interior on December 31, 1917, declared Benjamin Quapaw incompetent, by authority of the act of congress of June 7, 1897 (30 Stats. L. 62), but prior to the said date of incompetency, to wit, December 31, 1917, the secretary of the interior exercised no supervision or control over Benjamin Quapaw or his affairs, money or property, and there is not now, nor has there ever been, an act of congress imposing restrictions against alienation of, or empowering the secretary of the interior to control or exercise jurisdiction over, said unrestricted real estate purchased by Benjamin Quapaw with unrestricted money prior to December 31, 1917, as aforesaid."

It was alleged that the plaintiff, as the child of Benjamin Quapaw, deceased, inherited the unrestricted land above described and is entitled to the immediate possession of the land, and prays that her title be quieted against defendants.

On this appeal appellant contends that our statute G. S. 1935, 22-243, relating to absent or pretermitted children has no application to a foreign will where a testator was never domiciled in Kansas. In support of this theory the case of *Keith v. Eaton*, 58 Kan. 732, 51 Pac. 271, is cited and lengthy quotations made therefrom in appellant's brief. The Keith case is said to be "a parallel case to the case at bar," and that "We see no difference at all between that case and the case at bar."

In *Keith v. Eaton* it was held:

"The interpretation of a foreign will, as to the meaning of words used in it, is to be ascertained by the law of the testator's domicile, unless the circumstances surrounding the testator, or the language of the instrument as a whole, requires a different interpretation, or unless an interpretation by the law of the testator's domicile will contravene the law of the state in which it is offered for record and probate." (Syl. ¶ 1.)

The rule there announced that the meaning of words in a foreign will devising land in Kansas is, in the absence of controlling circumstances to the contrary, determined in accordance with usage at the domicile of the testator at the time when the will was made, is merely a rule of interpretation. However, it has not escaped criticism by the text writers. In Goodrich, Conflict of Laws, 2d ed., page 440, it is stated:

"A conflict of authority exists concerning whether the law of the testator's domicile or the law of the situs governs the construction of a will of land. There are good reasons for referring this matter to the law of the situs of the land."

But whatever the extent of the rule as to the interpretation of a foreign will, we have held that an interpretation cannot be accepted which brings about a result contrary to the law of this state. Thus in *Larned v. Larned*, 98 Kan. 328, 158 Pac. 3, it was said:

"The descent, alienation or transfer of real property in Kansas is exclusively governed by the laws of Kansas. Under the Kansas statute Larned could not, without his wife's consent, devise to other than his wife more than a half of his Kansas property, and an attempt to will to others more than a half would have been inoperative as to her. . . . Further it is insisted that the meaning given to the term in New Jersey, the domicile of the testator, is probably the one that was in his mind and that therefore we may properly look to the law of that state to ascertain his intention. *Keith v. Eaton*, supra, is cited as

authority to sustain this view, but while that case sanctions a reference to the law of the domicile to ascertain the sense in which the words of a will are used, that interpretation cannot be applied when it will contravene the law of the state where the will is offered for record and probate. The law of the domicile and the effect given to its provisions by the courts of that jurisdiction may be examined to aid in finding the intention of the testator, but when it comes to the disposition of real property the law of the place where the property is situated must control." (pp. 331, 333.)

In the will before us the intention of the testator is clear, he has used no ambiguous words, hence there is no occasion to invoke the doctrine of *Keith v. Eaton.*

In *Larned v. Larned,* supra, it was held that a widow, a resident of New Jersey, was entitled to renounce her rights under her husband's will and take her interest in the Kansas land under the Kansas law. A similar ruling was made in *Noecker v. Noecker,* 66 Kan. 347, 71 Pac. 815. If a nonresident widow is within the Kansas statute it would be difficult to suggest a reason why a nonresident pretermitted child should be denied the protection of the Kansas laws. This view was expressed in *Insurance Co. v. Luskey et al.,* 66 Ohio St. 233, 64 N. E. 120, in construing a similar statute. Our statute was borrowed from the Ohio law. (*Moore v. Herd,* 76 Kan. 826, 93 Pac. 157.) Where a statute is adopted from another state the construction placed thereon by such state should be given great weight. (*State v. Campbell,* 73 Kan. 688, 85 Pac. 784.)

The argument that the Kansas statute as to absent and pretermitted children does not apply because the testator and the absent child were nonresidents is unsound.

It is also contended that this action constituted a contest of a will which had been probated with the secretary of the interior, and that such contest is prohibited by our statute G. S. 1935, 22-255. In the case of *Vanderwerken v. Marks,* 138 Kan. 42, 23 P. 2d 608, an absent child was allowed to maintain an action of ejectment against the devisees under a will which had already been probated. In that case the court said:

"Insofar as the demurrer is concerned, defendants argue that as the time to contest the will has expired plaintiff is precluded from claiming, and rely upon R. S. 1931 Supp. 22-222 and decisions of this court interpreting that statute as it existed before it was amended, especially *Medill v. Snyder,* 71 Kan. 590, 81 Pac. 216. The difficulty with this argument is that it assumes that the rights of the absent child depend upon a contest of the will, which is not true. (*Spiker v. Burns,* 113 Kan. 572, 214 Pac. 426.) The child may be well content with every provision of the will with the single exception that, owing

to his being absent and reported dead, he was given nothing. The statute (R. S. 22-243) provides:

" 'When a testator at the time of executing his will shall have a child absent and reported to be dead, . . . the absent child . . . shall take the same share of the estate, both real and personal, that it would have been entitled to if the testator had died intestate. . . .' and makes provisions for contribution. Under its terms the rights of such child absent and reported to be dead are not dependent upon the will being contested (9 R. C. L. 41, 28 R. C. L. 81, 18 C. J. 838), and the trial court properly overruled the demurrer." (p. 45.)

In *Larned v. Larned*, supra, the fact that the will there in question had been probated in New Jersey did not preclude the widow from claiming her interest in the Kansas land under our statute.

Under these authorities it is immaterial whether the will was probated in Kansas or in some other jurisdiction. If the approval by the secretary of the interior of the will of Benjamin Quapaw constituted a probate of the will within the meaning of our statute G. S. 1935, 22-255, it would not bar the claim of this plaintiff. She does not claim under the will, but by descent as an heir. Her rights are fixed by the statute and do not depend upon a contest of the will of her father. (*Vanderwerken v. Marks*, supra.)

One question remains for examination. The petition alleged that Benjamin Quapaw was a full-blood Quapaw Indian; that he owned allotted and allotted inherited land; that such lands were restricted against alienation. It was alleged that by the act of congress of June 25, 1910, as amended by the act of congress approved February 14, 1913, he was authorized to dispose of such restricted lands by will, subject to the approval of the secretary of the interior. The record shows that the will of Benjamin Quapaw was recommended for approval by the commissioner of Indian affairs "so far as it relates to property under control of the United States" and that such recommendation was concurred in and the will approved by the secretary of the interior. The authority of this full-blood Indian to dispose of his restricted property by will was conferred by the act of congress and was limited by the provisions of such act.

Lot 4, block 7, involved in this action, was paid for out of the unrestricted royalties from the mining lease. In the brief for plaintiff many authorities are cited to show that lands so purchased are emancipated from the restrictions on alienation. As defendants make no contention that property in dispute is restricted land, it is unnecessary to review the authorities. We hold the lot in question is unrestricted land.

Under the statutes of the United States Benjamin Quapaw could only dispose of his restricted land by will when the action was approved by the secretary of the interior. It is also clear that he could dispose of his unrestricted land on the same footing as any other citizen. (*Blundell v. Wallace*, 267 U. S. 373, 45 S. Ct. 247, 69 L. Ed. 664; *In re Estate of Pigeon*, 81 Okla. 180, 198 Pac. 309.)

In Mills, Oklahoma Indian Land Laws, 3d ed., p. 329, it is stated:

"When Indian land is unrestricted it is subject to the laws of the state to the same extent as the land of other citizens."

As the land here in dispute is unrestricted land, we express no opinion as to the validity of the will of Benjamin Quapaw as to the restricted land in Oklahoma.

As Benjamin Quapaw had the right to dispose of his unrestricted lands on the same footing as any other citizen, we perceive no reason why he could not have made a valid will disposing of the Kansas land in this litigation. But since a valid will would not preclude this plaintiff from asserting her rights, if any she may have, we express no opinion as to the validity of the will as affecting the unrestricted land here involved, or whether such will should be probated in the state courts.

The petition alleges the plaintiff is a daughter by blood of the deceased Benjamin, and this allegation is admitted by the demurrer. She is not precluded from maintaining her action for any reason urged by defendants.

The judgment is affirmed.