No. 44,041

STATE OF KANSAS, *Appellant*, v. RAYMOND WALTON RICHARDSON, *Appellee*.

(399 P. 2d 799)

Opinion filed March 6, 1965.

*Richard H. Seaton*, Assistant Attorney General, argued the cause, and *Robert C. Londerholm*, Attorney General, was with him on the brief for the appellant.

*Charles E. Wetzler*, of Prairie Village, argued the cause, and *Robert F. Bennett* and *Robert F. Lytle*, both of Prairie Village, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the State in a proceeding initiated pursuant to K. S. A. 60-1507, wherein a prisoner in custody under sentence of a court of general jurisdiction claimed the right to be released upon the ground that he was denied due process of law and was unjustly, unlawfully and illegally confined in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. The trial court after granting the petitioner an evidentiary hearing, vacated and set aside the sentence which it originally imposed, and ordered the petitioner's discharge from imprisonment.

The underlying question in the case is whether the petitioner's constitutional rights have been violated.

The provisions of 60-1507, *supra*, are new to Kansas law, having been enacted as a part of the Laws of 1963, Chapter 303, commonly referred to as the new code of civil procedure, which became effective January 1, 1964. It follows the language of a federal statute, 28 U. S. C., § 2255 (originally enacted in 1948). It may therefore be said the body of federal law which has developed under § 2255, *supra*, should be given great weight in construing the provisions of 60-1507, *supra*, in the Kansas law. (See, *Webb v. Comm'rs of Butler Co.*, 52 Kan. 375, 34 Pac. 973; and *Hanson v. Hoffman*, 150 Kan. 121, 91 P. 2d 31.)

The provisions of K. S. A. 60-1507(*a*) read:

"*Motion attacking sentence.* A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may at any time move the court which imposed the sentence to vacate, set aside or correct the sentence."

Unless the motion and the files and records of the case conclusively show that a prisoner is entitled to no relief, section (*b*) of 60-1507, *supra*, directs the trial court which imposed the sentence to grant a prompt hearing upon the motion, determine the issues and make findings of fact and conclusions of law with respect thereto.

To implement proceedings under 60-1507, *supra*, this court on the 16th day of October, 1964, promulgated Rule No. 121 (now appearing in 194 Kan. p. xxvii). Procedurally this rule is quite extensive in that it embodies the substance of many federal decisions determined pursuant to § 2255, *supra*, of the federal code.

Prior to the adoption of the foregoing rule, J. Richard Foth and Arthur E. Palmer wrote an article entitled "POST CONVICTION MOTIONS UNDER THE KANSAS REVISED CODE OF CIVIL PROCEDURE" published in 12 Kan. L. Rev. 493 (May, 1964). This article is well written and should serve to enlighten the legal practitioner coming to grips with 60-1507, *supra*, for the first time.

The provisions of 60-1507, *supra*, may be invoked only by one in custody claiming the right to be released. Section (*a*) authorizes the prisoner by a motion to make a collateral attack upon the judgment in the court where it was rendered. The motion to vacate is a civil remedy. It is to be noted Rule No. 121(*a*) states:

"NATURE OF REMEDY. Section 60-1507 is intended to provide in a sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in districts courts in whose jurisdiction the prisoner was confined. A motion challenging the validity of a sentence is an independent civil action which should be separately docketed, and the procedure before the trial court and on appeal to the Supreme Court is governed by the Rules of Civil Procedure insofar as applicable. No cost deposit shall be required."

While the motion attacks the judgment in the criminal case it is separate from the criminal case and is, in fact and theory, a new case. The motion should be given a separate docket number and be captioned in a manner which will describe the new case and not cause confusion with the previous criminal case.

In *Heflin v. United States,* 358 U. S. 415, 3 L. Ed. 2d 407, 79 S. Ct. 451 (1959), it was said the motion under 28 U. S. C., § 2255, attacks a judgment in a criminal case, but in fact and in theory it is a new case; that since a proceeding under this section is in the nature of a civil action, regular pretrial procedure could be utilized.

In the case presently before the court the motion was filed in the original criminal action as docketed in the district court of Johnson County, Kansas, but the sentencing court considered it an independent civil action. Under the circumstances, we do not regard this variance to be fatal. We will consider the motion as having initiated an independent civil action to which the rules of civil procedure apply.

Rule No. 121(*h*) of the Supreme Court regarding presence of the prisoner states:

"PRESENCE OF PRISONER. The prisoner should be produced at the hearing on a motion attacking a sentence where there are substantial issues of fact as to events in which he participated. The sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing and requiring the prisoner to be present."

The foregoing rule regarding the presence of the prisoner is substantially the decision of the United States Supreme Court in *United States v. Hayman,* 342 U. S. 205, 96 L. Ed. 232, 72 S. Ct. 263 (1952), under § 2255, *supra,* of the federal code.

While the motion in this case was heard by the sentencing court prior to the promulgation of Rule No. 121 of the Supreme Court, it may be said the trial court conducted the proceeding in substantially the manner outlined by Rule No. 121. The prisoner was granted an evidentiary hearing at which he was present and testified. It was apparent the motion presented substantial questions

of law and triable issues of fact, by reason of which the trial court appointed counsel to assist the movant, an indigent person. (See, Rule No. 121[*i*]; and *Townsend v. Sain,* 372 U. S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 [1963].) The appointment of counsel to represent the indigent prisoner was no doubt designed by the sentencing court to meet the standards of a "fair" hearing set out in *Townsend.*

On the issues raised by the prisoner in this case only a full and fair post conviction hearing in the sentencing court would render it unnecessary to relitigate the issues in full, first in a state action and again in a federal forum.

In speaking of the proceeding conducted pursuant to § 2255, *supra,* of the federal code, the United States Supreme Court in *Sanders v. United States,* 373 U. S. 1, 10. L. Ed. 2d 148, 83 S. Ct. 1068 (1963), said:

". . . the imaginative handling of a prisoner's first motion would in general do much to anticipate and avoid the problem of a hearing on a second or successive motion. The judge is not required to limit his decision on the first motion to the grounds narrowly alleged, or to deny the motion out of hand because the allegations are vague, conclusional, or inartistically expressed. . . ." (p. 22.)

On this point see K. S. A. 60-1507(*c*) of the Kansas code and Rule No. 121(*d*) of this court.

We shall turn now to the proceedings before the trial court in the instant case.

The petitioner alleged in his motion to vacate the sentence that he was unjustly, unlawfully and illegally detained by the superintendent at the Kansas State Penitentiary, Lansing, Kansas. He alleged that agents of the sheriff and county attorney of Johnson County, Kansas, told him he was guilty of forging and falsely offering numerous checks which were in the possession of the county attorney's office, and which were written and tendered in violation of the laws of the state of Kansas; that the petitioner was further advised unless he entered a plea of guilty to one of the check charges, he would undoubtedly be sentenced for a period of 30 to 50 years in the state penitentiary as an habitual by reason of two prior felony convictions. The petitioner further alleged he was additionally informed that unless he entered a plea of guilty, his wife, who was a minor at the time, would be prosecuted and imprisoned.

He alleged that after a long period of interrogation he finally agreed to plead guilty to one of the charges against him upon the

promise that charges would not be brought against his wife, and that the State would ask the court for a 1 to 10-year sentence against him; that during all interrogation by the officers of Johnson County and the agents of the State of Kansas, and during all negotiations with said petition, the petitioner was not afforded the assistance of legal aid or counsel. He then alleged:

"5. That on the 17th day of June, 1963, petitioner was arraigned before Judge William S. Allen and the Journal Entry of said arraignment states that the defendant was charged with two counts of forgery and the preliminary hearing was set for July 8, 1963, at 3:30 p. m. The petitioner was not represented by counsel at the preliminary hearing nor did he have the opportunity to talk to counsel, have legal assistance before or during said preliminary hearing. Petitioner had no knowledge of criminal law or procedure and was not informed of any rights he may have up to and including the time for the preliminary hearing.

"6. Thereafter, on the 28th day of June, 1963, petitioner again appeared before Judge William S. Allen and on motion of the State's representative, James A. Wheeler, Count Two of the amended complaint, which is attached and made a part of this petition and marked Exhibit A was dismissed. At said time petitioner waived a preliminary hearing on Count One of the said complaint. Petitioner was bound over to The District Court of Johnson County, Kansas, for trial on felony charges as set out in Count One of the amended complaint. Bond was set at One Thousand and 00/100 ($1,000.00) Dollars. Petitioner was not represented by counsel at this stage of the proceedings and was not informed of the consequences and ramifications of waiving the preliminary hearing. Petitioner is not versed, cognizant nor familiar with the intricacies of criminal law and procedure and therefore could not understand the effect that such a waiver would have on his constitutional rights without the assistance and aid of legal counsel.

"7. On the 28th day of June, 1963, petitioner herein was brought before the Honorable Clayton Brenner. Petitioner at this time was represented by Court-appointed counsel who waived a formal reading of the information. Petitioner's Court-appointed counsel entered a plea of guilty to Count One of the amended complaint in behalf of the petitioner. At said sentencing Mr. James Wheeler, Assistant County Attorney of Johnson County, Kansas, asked that the normal sentence for forgery which will not be for more than ten (10) years as set out in K. S. A. 21-631 be disregarded and that petitioner should be sentenced for a period of two (2) to twenty (20) years as set out in K. S. A. 21-107(a). At all times prior to said sentencing petitioner had been informed and was under the impression that if he pleaded guilty, he would be sentenced for a period of not more than 1-10 years. Petitioner did not have ample opportunity to talk to the aforementioned Court-appointed counsel; that the total time spent with the Court-appointed counsel was between three (3) to five (5) minutes; that said Court-appointed counsel did not inform him of his constitutional rights nor did he inform petitioner that the State intended to ask the Court for a 2-20 year sentence."

Petitioner further alleged that he was indigent; that he was induced to plead guilty by reason of the erroneous promises and misrepresentation made by the agents of the State of Kansas, by reason of which he has been denied due process of law and is unjustly, unlawfully and illegally confined in violation of the Constitution of the United States. Wherefore, he prayed that the sentence be vacated and set aside, and that he be discharged from sentence and imprisonment.

The information pursuant to which the petitioner was tried alleged that he forged a check in the amount of $125, constituting forgery in the second degree. (K. S. A. 21-608.)

The justiciable issues suggested by the foregoing motion under 60-1507, *supra,* are: (1) Was the plea of guilty entered by the petitioner in the criminal case voluntarily made and free from coercion and misrepresentation; and (2) was the petitioner adequately represented by competent counsel in the criminal case. They present triable issues of fact and substantial questions of law.

The record on appeal discloses the petitioner was not represented by counsel until he was brought before Judge Brenner in the district court of Johnson County, Kansas, for arraignment on the 28th day of June, 1963. At that time Lawrence T. Loftus, an attorney, was appointed to represent the petitioner.

At the hearing in the lower court a transcript of the proceedings at the arraignment, plea and sentencing was presented in evidence. The transcript discloses that court-appointed counsel for the petitioner waived formal reading of the information and indicated the petitioner's intention to enter a plea of guilty to the charge.

The transcript then discloses the following:

"THE COURT: How old are you?

"THE DEFENDANT: Twenty-seven.

"THE COURT: You understand that your attorney has for you waived the formal reading of the Information, which is the formal charge setting out the crime of forgery under Section 21-609 [*sic,* 21-608] of the 1949 General Statutes of Kansas? This is forgery of a check, and he has entered a plea of guilty for you. Do you understand that?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Do you have any legal reason to state why the sentence of the Court should not be imposed upon you at this time on your plea of guilty to forgery under this statute?

"THE DEFENDANT: No.

"THE COURT: The penalty provision is Section 21-631. It provides that penalty shall not be more than ten years. Do you have any reason why the normal penalty should not be imposed, Mr. Wheeler?

"MR. WHEELER: Yes, we do, Your Honor. On May 2, 1955, Raymond Walton Richardson was convicted of forgery in the second degree and was sentenced to Lansing, Kansas, for one to ten years. This gives him a prior conviction under 21-107a. We ask that the second provision of 21-107a be applied here and the sentence be not exceeding twenty years.

"THE COURT: Have you had notice of this request, that the State was going to ask for it?

"MR. LOFTUS: Yes, Your Honor, we have.

"MR. WHEELER: And I believe the defendant also had notice, did you not, Mr. Richardson?

"THE DEFENDANT: Yes.

"THE COURT: The penalty under the statute which I just related, Section 21-631, sets forth not more than ten years, and 21-107a of the General Statutes of Kansas, that on a second conviction of a felony the penalty shall be not less than double the normal penalty. Do you have any legal reasons to state why this sentence of the Court should not be imposed upon you at this time?

"THE DEFENDANT: I don't.

"THE COURT: It is the order, judgment, and sentence of the Court that you be confined at hard labor in the Kansas State Penitentiary for a period of not more than twenty years, and that you pay the costs of this action including a fee of $10.00 hereby allowed to Mr. Loftus as your attorney in this case. Commitment is ordered issued. You are remanded back to the custody of the Sheriff."

The State's Exhibit No. 1, being the forged instrument, was also introduced in evidence.

Thereupon testimony of the petitioner was taken. He testified in substance that he was arrested on June 17, 1963, and arraigned in the magistrate court of Johnson County. The charges were read to him and bond was set. The date for his preliminary hearing was scheduled. He had no money to put up a bond and he was not represented by counsel. Later in the week of June 17th Mr. Ed Hays, county probation officer, talked with him while he was in jail. Mr. Hays was not the petitioner's parole officer. The nature of this conversation was essentially that if the petitioner did not plead guilty, the prosecution was going to ask for a 30-year to life sentence in the penitentiary. The petitioner was not represented by counsel during this conversation with Mr. Hays.

Also during the week of June 17, 1963, Mr. James Wheeler, assistant county attorney for Johnson County, Kansas, and Mr. Charles Lane of the sheriff's patrol conversed with the petitioner. Petitioner informed both parties that he was not guilty of the charges, and that he would therefore not plead guilty. In the conversation Mr. Wheeler indicated that he would "throw the big bitch" at the petitioner (which in more formal language means the maximum sen-

tence authorized pursuant to the habitual criminal act for a third time felony conviction) but that if the State did not have to go through the expense of trying him, Mr. Wheeler would recommend a 2 to 10-year sentence to the court. The petitioner was not represented by counsel during these conversations with the county attorney's office and its agents, and the petitioner did not have a chance to confer with counsel prior to these negotiations.

While the petitioner was incarcerated in the Johnson County jail for failure to post bond, papers were served upon him giving him notice that charges of forgery were being brought against his minor wife in the Johnson County probate court. Petitioner's wife was eighteen years of age and it was the petitioner's belief that his wife could be sent to the women's state penitentiary if found guilty of such charges.

After further negotiations with the county attorney's office and its agents, the petitioner was promised that two of the three charges would be dismissed against him and that a 1 to 10-year sentence would be recommended to the court if the petitioner would change his plea to guilty. Since the petitioner was facing a possible life imprisonment, and since he did not know what the State could or would do with respect to his minor wife, he decided to change his plea. He was told that if he would plead guilty they would not press charges in the district court on his wife. These negotiations with the county attorney's office extended over a 12-day period, and at no time during these negotiations was the petitioner represented by legal counsel, nor did he have funds with which to employ an attorney.

On the 28th day of June, 1963, the petitioner was again brought before the magistrate court. Petitioner testified that no mention was made of a preliminary hearing on this second appearance before the magistrate court, and that he never requested a preliminary hearing. He testified that he asked for a lawyer at this time and he also waived preliminary hearing. He was told he would be represented by counsel when he was arraigned in the district court.

Shortly after the petitioner was bound over to the district court on the 28th day of June, 1963, by the magistrate court, he was taken before the Hon. Clayton Brenner, judge of the district court of Johnson County, Kansas, division No. 2, where Lawrence T. Loftus, was appointed to represent him as counsel.

At this time the petitioner was in the courtroom in the presence of two other indigent defendants whom Mr. Loftus was also ap-

pointed to represent. When the petitioner conferred with Mr. Loftus, all three defendants were conferring with him simultaneously or for brief periods of time individually in the presence of each other.

The petitioner testified on direct examination concerning his consultation with Mr. Loftus, his counsel, as follows:

"The first time I had an opportunity to talk with an attorney was when I was arraigned before this court. They called my case to docket and they appointed Mr. Loftus as my counsel. Then they stopped proceedings of the other hearing so I had appropriate time to speak with my counsel. At that time he had three of us to speak with. We were all on the bench here in the courtroom. I spoke with Mr. Loftus approximately twenty to thirty seconds at four different periods. He asked me if I was going to plead guilty and I said, 'Yes, I was going to plead guilty to a two-to-ten-year sentence.' That is what had been promised me. He told me I couldn't receive a two-to-ten-year sentence. He said I could only receive a one-to-ten. This was something to do with the statute. He explained that a check charge is one-to-ten.

"I was not given a copy of the information or the charges at this time. I received a copy of a complaint and a warrant on the three different charges. I was not presented with a copy of the information to know what actually I was being charged with during the eleven-day period. Mr. Wheeler just told me I had waived preliminary on this check charge and I would be brought before the court the same afternoon and plead guilty to that charge. I was primarily concerned with the number of years I was going to serve. If I am going to plead guilty to a charge I want to know how many years I am going to do.

"Mr. Loftus really gave me no advice. He asked me if I had any prior record. I told him 'Yes.' He asked what the prosecution was going to do. I told him about the two-to-ten-year sentence. Then he informed me that this wasn't the proper sentence. He said, 'The prosecution isn't going to bring the habitual act?' I told him they were not. I am familiar with the habitual criminal act. We did not talk about the facts of my case. I didn't ask him if he felt these facts constituted forgery. I didn't ask him anything.

"When I was before Judge Brenner I felt the sentence would be one-to-ten. This was one of the primary reasons I entered a plea of guilty. I am not an attorney. I have no knowledge of the law that I feel would enable me to represent myself in a criminal matter. I have had formal education through the first six weeks of the 10th grade."

On cross examination the petitioner stated that he did not request to plead guilty but after the conversation he had with Mr. Lane and Mr. Wheeler, he communicated through Mr. Lane to Mr. Wheeler that he desired to plead guilty after Mr. Wheeler had explained the habitual criminal act to him. He further testified he had two or three prior convictions. He admitted two of these convictions were prior felony convictions in the state of Kansas, in one of which he was sentenced to the State Industrial Reformatory and

in the other he was sentenced to the state penitentiary at Lansing. He further testified on cross examination:

"I talked with Mr. Loftus in the courtroom sitting on the bench with Mr. Berles and Mr. Mayes. I talked with Mr. Loftus myself about three or four different times. I advised him that I had already made my own deal. I had all the conversations personally with the county attorney's office and the sheriff's office. I really didn't want to get thirty-to-life. I said if they would not ask for what they termed the 'big bitch' I would plead to a one-to-ten.

"I do not deny that I said on the twenty-eight day of June 1963, what the court reporter has certified to but my mind wasn't in this court at that time. I was just more or less a statue standing there. My memory would have been better then than now. Mr. Wheeler told me before I ever came to Judge Brenner's court that the normal sentence is one-to-ten for forgery in the second degree. I believe he told me that the second time, which they call the little bitch, I would be doubled up and it would be two-to-twenty. He told me that if it was the big one that it would be not less than fifteen to life or something like that . He advised me that if the state of Kansas was put to the expense of trying me for this that he was going to ask that the third habitual criminal section be applied. I told him that I wasn't guilty of the charge. Nobody wants the third habitual criminal section to be applied. I requested to come down and plead guilty after I made arrangements with Charles Lane. The arrangements were two-to-ten."

The petitioner also denied writing the check in question on cross examination.

Upon interrogation by the court concerning his testimony at his criminal trial the petitioner testified:

". . . I made the answers contained in the reporter's transcript. I answered it that way but meaning actually not knowing this habitual criminal was going to be involved. I did not know that I was going to be sentenced under the habitual criminal act."

Mr. Loftus testified on direct examination concerning the representation of the petitioner at the criminal trials as follows:

"I reside in Olathe, Kansas, and I am an attorney at law; and I was an attorney at law on June 28, 1963, duly qualified and licensed in the state of Kansas. I confine my practice to Johnson County. I was appointed by Judge Brenner to represent one, Raymond Walton Richardson, on June 28, 1963, in Division 2, Johnson County, Kansas. I spoke to Mr. Richardson and to Mr. Wheeler individually concerning the question of his plea of guilty.

"QUESTION: And concerning what, would you tell the court?

"ANSWER: The conversations that were had that particular day of my appointment consisted more in the punishment provision of the statute involved in forgery in the second degree as to which particular section of the habitual criminal act was going to be applied.

"When I first talked to Mr. Richardson, I saw the copy of the charges filed against him. That is the information. I had been given a copy of it from

the file. In my first conversation with him, I told him that this carried a one-to-ten. I subsequently found out in talking to Mr. Wheeler and Mr. Richardson that he had a previous conviction, and I talked with Mr. Richardson several times in this short interval of time; at no great length of time was there a long conversation. In fact, we did not leave the courtroom. I subsequently found out there was going to be the habitual criminal act used. I believe that Mr. Richardson was informed of that fact. It was a question at this particular time as to which section of the habitual criminal act was to be used. It is my recollection that Mr. Wheeler told me to tell Mr. Richardson if he did not plead guilty that the third section or the fifteen-to-life section would be used. If he did plead, that the second section would be used. Whether I told him that that carried a two-to-ten, I do not recollect; but I remember that he was notified of the fact that the second section of the habitual criminal act would be used. That was just prior to the time that he entered his plea of guilty. As I said, the actual time involved was very short. I can remember some conversation about his wife, but what the conversation was I do not remember. I do not remember whether I had a conversation with Mr. Wheeler concerning the fact that she would be handled by the juvenile court. When we conferred, Mr. Richardson and I, we did not leave the room. It really wasn't too private. We were not in separate room together. We were at all times on the bench in the front of the court-room. I did confer with him individually."

## On cross examination Mr. Loftus testified:

"I talked to Mr. Richardson before I talked to Mr. Wheeler. My recollection of this is all rather vague. It is my recollection that Mr. Richardson told me he wanted to plead guilty. I had a copy of the information in my hand at that particular time. As I remember, I looked at it; and I said, 'This carries one-to-ten, is that what you want to plead to?' My recollection is that he said, 'Yes.' It was definitely my impression at that time that Mr. Richardson had made his own deal. Essentially, I was just the man to go through the formalities to dispense with the deal. I don't recall whether I left the information with Mr. Richardson when I was talking to Mr. Wheeler, but I know that he did see it because I had it in my hand at that particular time. We did not discuss his offense at all, because he was talking then about plead-ing guilty. When I found out that he had a previous conviction for the same particular crime, it was my estimation then that he knew pretty well what his constitutional rights were concerning this particular crime.

"I doubt if I explained to him the niceties or distinctions between the various degrees of forgeries. It was my understanding that he wanted to plead guilty and that all of the preliminary negotiations had been made and that this was just the means to the end which was his plea of guilty.

"I had three defendants sitting over there on the bench. I don't remember what order I talked to them in but I do remember I would talk to one, then I would talk to them initially as to what the charge was. As I remember, I showed them the information, then I would talk to them. What we talked about, I do not remember. I doubt that I would have had time to explain

every minute innuendo of the law and the ramification of it in the particular time I had. It was my understanding that all of this had been explained to them in their negotiations with the county attorney's office and that they knew full well, especially this particular defendant, at that time what was going on and what their particular rights were at that time, especially since this defendant had had two previous convictions of the same crime. I did not take part in any of these negotiations with the defendant. It was all between the county attorney's office and the defendant to my knowledge. I was just brought in at the last minute after the deal was made. I don't know what deals were made beforehand. I did not have a chance to talk to the defendant so I could offer any argument to the Court in way of mitigation of the sentence. I did not know anything about the defendant's background to tell the Court; for example, that two of these sentences were when he was very young and that type of thing."

## On examination by the court Mr. Loftus testified:

"I do not remember whether I asked him whether or not he was guilty. That is the standard procedure on something like this and whether or not at that time these questions were asked and what words were used I do not remember. I remember that there was conversation just 'are you guilty or not guilty, you can plead not guilty,' and what the actual words involved were I do not remember, but I think to the best of my recollection that he was apprised substantially of his rights.

### "Cross-Examination.

"I don't have an independent recollection of the exact conversation that was had but to the best of my knowledge there was a conversation that he didn't have to plead guilty and along this particular line. Whether I went down and explained individually what his rights were and what the trial would be, I don't remember.

### "Re-Direct Examination.

"I believe he substantially knew what his rights were and was apprised of them. I don't remember just exactly what caused me to feel this. I remember feeling that this was all very rapid. I believe I felt that because of his prior forgery convictions he understood his situation.

### "Re-Cross-Examination.

"The time involved was very short. I came in, I was appointed; and I don't imagine that there was at the most thirty to forty-five minutes between that time and the time of sentencing.

### "Examination by the Court.

"All negotiations between the defendant and the county attorney's office or any of the officers were carried out prior to the time of my appointment, to the best of my knowledge."

The trial court took the matter under advisement, and on the 3rd day of June, 1964, entered the following order vacating sentence:

"Order Vacating Sentence.

"The court finds:

"The defendant is an indigent person.

"The defendant maintains he is not guilty of the crime with which he is charged.

"The defendant was arrested on June 17, 1963, and his preliminary hearing set for July 8, 1963. He was arraigned. He appeared in the magistrate court on June 28th, 1963, and waived preliminary hearing. At that time and prior thereto he was not represented by counsel.

"The arraignment and preliminary hearing in the magistrate court are critical states of a criminal proceeding, and that an attorney should have been appointed [for] the defendant prior thereto.

"The defendant was not fully nor adequately advised of his constitutional rights at the time of his arraignment and plea of guilty in the district court of June 28, 1963.

"The sentence imposed on the defendant on June 28, 1963, is hereby vacated and set aside. The defendant is ordered discharged from imprisonment.

"Dated this 3rd day of June, 1964."

K. S. A. 62-1304, provides that counsel should be appointed for indigent persons about to be arraigned upon an indictment or information for any offense against the laws of the state of Kansas.

The order of the trial court vacating the petitioner's sentence states that "The arraignment and preliminary hearing in the magistrate court are critical states of a criminal proceeding, and that an attorney should have been appointed [for] the defendant prior thereto." The petitioner testified that he was not represented by counsel at the time he waived preliminary hearing. He also testified that he requested counsel be appointed for him at that time. Counsel was first appointed for him prior to his arraignment in the district court upon the information filed against him in that court.

Under the law of Kansas, it is well settled that failure to appoint counsel at a preliminary examination is not error. In so holding this court said in *State v. Daegele,* 193 Kan. 314, 393 P. 2d 978 (cert. den. January 18, 1965, 379 U. S. 981, 13 L. Ed. 2d 571, 85 S. Ct. 686):

"In the first place, under the laws of Kansas a preliminary examination is not a 'trial' in the ordinary sense of the word. (*State v. Badders,* 141 Kan. 683, 42 P. 2d 943.) The purpose of a preliminary examination for one charged with a felony is to determine whether an offense has been committed and whether there is probable cause for charging a defendant with the commission thereof. The proceeding is not a trial in the sense that one may be found 'guilty.' A defendant is bound over for trial only where the state establishes that an offense has been committed and that there is probable cause for charging him with its commission—otherwise he is to be dis-

charged. (G. S. 1949, 62-618.) Under the provisions of G. S. 1949, 62-615, a defendant has the right to be assisted by counsel at a preliminary examination, but there is no statute requiring the appointment of counsel in such a proceeding, and it has been held many times that failure to appoint counsel at a preliminary examination is not error. (*Fry v. Hudspeth,* 165 Kan. 674, 676, 197 P. 2d 945; *Martin v. Edmondson,* 176 Kan. 374, 270 P. 2d 791; *State v. Crowe,* 190 Kan. 658, 378 P. 2d 89, and *State v. Naillieux,* 192 Kan. 809, 391 P. 2d 140.) Moreover, the well-established rule is that any so-called alleged (irregularity) pertaining to a preliminary examination is deemed to be waived where a defendant enters a voluntary plea of guilty in the district court. (*Cooper v. Hudspeth,* 166 Kan. 239, 240, 199 P. 2d 803; *Foster v. Hudspeth,* 170 Kan. 338, 224 P. 2d 987 [petition for writ of certiorari dismissed on motion of petitioner, 340 U. S. 940, 95 L. ed 678, 71 S. Ct. 503]; *Plasters v. Hoffman,* 180 Kan. 559, 560, 305 P. 2d 858, and *Thomas v. Hand,* 184 Kan. 485, 337 P. 2d 651.)" (p. 316.)

As early as 1932, the Supreme Court of the United States recognized that an accused in a capital case requires the guiding hand of counsel at every step in the proceedings against him. For many years, this hard and fast rule was imposed upon federal court system, but was not held applicable to the states. State courts followed the "rule of thumb" propounded in the case of *Betts v. Brady,* 316 U. S. 455, 86 L. Ed. 1595, 62 S. Ct. 1252 (1942), which essentially held that indigent defendants were entitled to court-appointed counsel under the due process clause of the Fourteenth Amendment only under those circumstances where failure to appoint counsel would amount to a "denial of fundamental fairness shocking to the universal sense of justice."

The landmark case of *Gideon v. Wainwright,* 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A. L. R. 2d 733 (1963), overruled *Betts v. Brady,* supra, and held that it was no longer necessary for the defendant to show that his rights had been flagrantly violated, but that an indigent defendant was entitled to appointed counsel in all criminal cases unless the right is competently and intelligently waived. The Sixth Amendment to the Federal Constitution which guaranteed the accused in a criminal case the assistance of counsel in federal courts was made obligatory upon the states by the Fourteenth Amendment.

The foregoing doctrine was extended by *Douglas v. California,* 372 U. S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963), which held the Fourteenth Amendment guarantees an indigent criminal defendant the assistance of counsel on appeal in a state court when he has the appeal as a matter of right. Failure to appoint counsel for the

indigent was held to be a discrimination between the rich and the poor which violates the Fourteenth Amendment.

Recent decisions of the United States Supreme Court have considered the question of when the right to appointed counsel should accrue to an indigent defendant in a criminal case. Under the Federal Constitution, the accused's right to counsel does not arise in a preliminary hearing unless that hearing constitutes a "critical stage" in the criminal proceeding. The Kansas preliminary hearing, as it is ordinarily conducted, has been held not to be a critical stage in the criminal proceeding. Thus, a waiver of the preliminary hearing may be made without the appointment of counsel. (*Latham v. Crouse*, 320 F. 2d 120, 122 [10th Cir. 1963], cert. den. 375 U. S. 959, 11 L. Ed. 2d 317, 84 S. Ct. 449 [1963].)

The decisions of the United States Supreme Court indicate that a critical stage is that point in the proceedings when there is at least a reasonable possibility of prejudice to the defendant later at his trial. The possibility of such prejudice was the basis of four recent decisions on this point. In *Hamilton v. Alabama*, 368 U. S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157 (1961), the defendant was not represented by counsel at the arraignment when vital defenses could be lost. In *White v. Maryland*, 373 U. S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050 (1963), the defendant entered a plea of guilty at a preliminary hearing, which could be used against him at his trial, at a time when he was not represented by counsel. In *Massiah v. United States*, 377 U. S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964), a defendant under indictment made incriminating statements which were surreptitiously listened to by a federal agent and used against him at his trial. These statements were made in the absence of retained counsel. In *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), a prime suspect in a murder case made incriminating statements after he had requested and been denied an opportunity to consult with his retained attorney and without being warned of his right to remain silent. The court held:

". . . that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 US, at

342, 9 L ed 2d at 804, 93 ALR2d 733, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (p. _____.)

The foregoing federal decisions indicate a sharp contrast with the facts in the instant case where at the preliminary hearing no defenses were lost, no plea was taken, and no incriminating statements were made in the absence of counsel.

It is therefore held under both the state and the federal law the lower court erred in holding the appointment of counsel was necessary at the preliminary hearing. It is not a critical stage of the criminal proceeding under Kansas law.

In the petitioner's motion to vacate the sentence he claims he was induced to plead guilty on the false promise of the prosecution that the habitual criminal act would not be invoked and his sentence would be 1 to 10 years. This allegation is supported only by his own uncorroborated testimony. It is therefore insufficient as a matter of law to form the basis of an order releasing him. (*Williams v. Crouse,* 193 Kan. 526, 530, 394 P. 2d 96.)

Rule No. 121 ( g ) of the Supreme Court reads:

"BURDEN OF PROOF. The movant has the burden of establishing his grounds for relief by a preponderance of the evidence. The uncorroborated statements of the movant shall be insufficient to sustain the burden of proof."

Furthermore, the petitioner's claim on this point is contradicted both by the record of the criminal proceedings at which he entered a plea of guilty and by the testimony of Mr. Loftus, his counsel in the criminal proceedings, given at the hearing on the instant motion. When the State asked that the sentence be doubled to not more than 20 years for a second felony conviction under G. S. 1949, 21-107a ( now K. S. A. 21-107a ) both the petitioner and his counsel stated in open court they had been given prior notice this request would be made by the prosecution. These statements were made immediately after the petitioner's plea of guilty. Thus, the petitioner knew the sentence would be 20 years when he entered his plea of guilty. Mr. Loftus, his court-appointed attorney in the criminal proceedings, testified pursuant to the hearing on this motion that he had himself conveyed to the petitioner immediately before his plea the intention of the State to seek a sentence for a second felony conviction under the habitual criminal act if he would enter a plea of guilty. He further explained it was the State's position that if the petitioner did not plead guilty, and was later convicted, the State would request a sentence for a third

felony conviction under the habitual criminal act, providing 15 years to life imprisonment.

The lower court's order vacating the petitioner's conviction states as a second ground for the decision that the petitioner was not fully nor adequately advised of his constitutional rights at the time of his arraignment and plea of guilty. In effect, the court concluded on the basis of the record that the petitioner's court-appointed counsel did not completely represent him, thus rendering the proceedings void.

The petitioner's conviction carries a presumption of regularity. (*Andrews v. Hand,* 190 Kan. 109, 121, 372 P. 2d 559.) The burden rests upon the petitioner to show that his counsel was so incompetent and inadequate in representing him that the total effect was that of a complete absence of counsel. (*Hicks v. Hand,* 189 Kan. 415, 417, 369 P. 2d 250; *Converse v. Hand,* 185 Kan. 112, 115, 340 P. 2d 874; and *Miller v. Hudspeth,* 164 Kan. 688, 708, 192 P. 2d 147.) The burden is never sustained by the unsupported and uncorroborated statements of the petitioner. (*Williams v. Crouse,* supra.)

The only evidence introduced on this point was introduced by the petitioner. The petitioner testified that Mr. Loftus spoke with him only twenty to thirty seconds on four different occasions just before his plea. He said he was never shown a copy of the information and that his counsel did not inform him the prosecution intended to double the ordinary 1 to 10-year sentence if he would enter a plea of guilty.

This is contradicted by the testimony of Mr. Loftus that the petitioner was shown a copy of the information, and that he explained to the petitioner that the state intended to use the third felony conviction section of the habitual criminal act unless he would plead guilty, in which event it would use only the second felony conviction section of the act. That the petitioner understood the charge is borne out by his testimony that he had two prior convictions of second degree forgery. That counsel informed him of the State's intent to use the habitual criminal act is further shown by the statements in the transcript of the criminal proceedings. At that time both counsel and the petitioner, after entering the plea of guilty, stated they had been previously notified that the act would be invoked so as to make the sentence not more than 20 years.

Under circumstances very similar to these, this court in *Miller v.*

*Hudspeth,* supra, where the petitioner claimed his counsel did not advise him of the meaning of a plea of guilty nor of the possible penalties, said:

"The testimony of Miller with respect to the things he said Harris did not tell him is in conflict with that of Harris, his own witness. Miller's uncorroborated testimony that he did not know . . . the meaning of a plea of guilty or that he might receive the death penalty is also directly contrary to what the court record discloses the district judge told him. The records of courts are not set aside upon the unsupported statements of a defeated litigant. . . ." (p. 704.)

Also, in *Johnson v. Crouse,* 191 Kan. 694, 383 P. 2d 978, this court noted:

"The petitioner makes the specific charge that his court-appointed counsel did not fully explain the significance of a plea of guilty or fully inform him as to the offenses with which he was charged. Here, again, there is only the uncorroborated statement of the petitioner as to this matter and the transcript clearly shows that he advised the district court that, contrary to what he now claims, he had opportunity to counsel with his attorney and that he had done so." (p. 698.)

. The court holds upon the record here presented the petitioner has not sustained his burden of proof. What the record reveals is that the petitioner agreed to plead guilty on the understanding that only one of his several prior felony convictions would be introduced. He informed his counsel of this intention. Counsel could not under these circumstances seek to change the petitioner's plan, and risk an increased sentence. Nor did counsel have to explain in detail the elements of the charge, when the petitioner had two prior felony convictions for the same crime. He could only warn his client that he did not have to plead guilty, inform him of the consequences, and ascertain whether he desired to do so. All these things counsel for the petitioner did.

The judgment of the lower court is reversed.

SCHROEDER, J., dissenting: In my opinion the decision of the court overlooks the fact that this is a civil proceeding wherein the petitioner is required to prove the essential allegations of his motion to the satisfaction of the trial court only by a preponderance of the evidence. The trial court after considering all of the evidence presented by the record found in favor of the petitioner.

It has been held a general finding by a trial court raises a presumption that it found all facts necessary to sustain and support the judgment. (*Andrews v. Hand,* 190 Kan. 109, 372 P. 2d 559; *Dryden*

*v. Rogers,* 181 Kan. 154, 309 P. 2d 409; and *Davis v. Davis,* 162 Kan. 701, 178 P. 2d 1015.)

The first issue suggested by the petitioner's motion to vacate the sentence was that the plea of guilty entered by him in the criminal case was not voluntarily made and free from coercion and misrepresentation.

The petitioner contended throughout that he was not guilty of the crime with which he was charged. Evidence both by the petitioner and his counsel at the criminal proceeding was sufficient to establish that the plea of guilty was coerced. Even if the petitioner's proof with respect to promises made concerning use of the habitual criminal act failed, the evidence was sufficient to indicate that threats were made concerning the prosecution of the petitioner's wife unless he entered a plea of guilty. This the trial court was entitled to believe constituted coercion at a time when the petitioner was not represented by counsel in the criminal proceeding. Counsel for the petitioner in the criminal proceeding acknowledged there was some discussion concerning the petitioner's wife. All of the evidence on this point was demeanor evidence and this is a significant factor in adjudging credibility. (*Townsend v. Sain,* 372 U. S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 [1963].) The court was well within its powers to find that such testimony of counsel corroborated the testimony of the petitioner.

The evidence is undisputed that the petitioner prior to his arraignment and plea in the criminal proceeding was indigent and incarcerated for a period of approximately twelve days, facing a possible life sentence. During this time numerous negotiations with the county attorney's office and its agents were held with the petitioner concerning the crimes with which he was charged and the punishment. All of these negotiations were without the aid and benefit of counsel for the petitioner. Furthermore, it is undisputed that the petitioner received the assistance of counsel for only a very short period of time before his arraignment, plea and sentencing.

Recent federal decisions, cited and discussed in the court's opinion, indicate that the critical stage of a proceeding at which an indigent defendant is entitled to the aid and assistance of counsel is that stage of the proceedings at which the accused could be prejudiced.

No hard and fast rule can be stated which will apply to all cases. Ordinarily, under Kansas law, the preliminary hearing is not a critical stage of the criminal proceeding. But an appraisal of the

totality of the undisputed facts in this case, as established at the hearing on the motion to vacate, indicates a critical stage of the proceeding with respect to the petitioner occurred prior to the preliminary hearing. On the facts a shroud of suspicion is cast upon whether or not the concept of fundamental fairness has been contravened and whether the petitioner has been denied his constitutional rights.

On this point the trial court found and held in favor of the petitioner, and in my opinion correctly held that "The arraignment and preliminary hearing in the magistrate court" was a critical stage of the criminal proceeding in this case, and that an attorney should have been appointed for the petitioner prior thereto.

Had the petitioner not been an indigent person he certainly would have had the aid and assistance of counsel and would have been advised on the facts and the law prior to the negotiations of barter conducted by the county attorney's office while the petitioner was incarcerated. The vice in the practice which permits the prosecution to bargain with the indigent accused is that it requires the accused to barter with the issue of his guilt or innocence. That is the vital issue in any criminal proceeding.

In *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), Wigmore was quoted as follows:

" '[A]ny *system of administration which permits the prosecution to trust habitually to compulsory self-disclosure as a source of proof must itself suffer morally thereby.* The inclination develops to rely mainly upon such evidence, and to be satisfied with an incomplete investigation of the other sources. The exercise of the power to extract answers begets a forgetfulness of the just limitations of that power. The simple and peaceful process of questioning breeds a readiness to resort to bullying and to physical force and torture. If there is a right to an answer, there soon seems to be a right to the expected answer,—that is, to a confession of guilt. Thus the legitimate use grows into the unjust abuse; ultimately, the innocent are jeopardized by the encroachments of a bad system. Such seems to have been the course of experience in those legal systems where the privilege was not recognized.' 8 Wigmore, Evidence (3d ed. 1940), 309. (Emphasis in original.)" (p _____.)

Throughout the record in the instant proceeding, it is apparent counsel for the petitioner in the criminal proceeding was not given a sufficient opportunity to fulfill his duty to his client. This is indicated by the following excerpts from the testimony of Mr. Loftus:

"Essentially, I was just the man to go through the formalities to dispense with the deal."

"We did not discuss his offense at all, because he was talking then about pleading guilty."

"It was my understanding that he wanted to plead guilty and that all the preliminary negotiations had been made and that this was just the means to the end which was his plea of guilty."

"I was just brought in at the last minute after the deal was made."

"I did not have a chance to talk to the defendant so I could offer any argument to the Court in way of mitigation of the sentence. I did not know anything about the defendant's background to tell the Court; for example, that two of these sentences were when he was very young and that type of thing."

"The conversations that were had that particular day of my appointment consisted more in the punishment provision of the statute involved in forgery in the second degree as to which particular section of the habitual criminal act was going to be applied."

"I remember feeling that this was all very rapid."

The foregoing is not to say that counsel who did represent the petitioner at the criminal proceeding was incompetent. It does say the petitioner did not receive the aid and assistance of counsel to which he was entitled in the criminal proceeding prior to the arraignment and his entry of a plea of guilty.

The Kansas Supreme Court has held that a plea of guilty, in order to be valid, must be freely, knowingly and understandingly made. Otherwise it is a violation of the constitutional guarantee of due process and the judgment is void. (*Miller v. Hudspeth*, 164 Kan. 688, 705, 192 P. 2d 147, and authorities cited therein.) A coerced plea of guilty is not voluntary or freely made.

In 14 Am. Jur., Criminal Law, § 270, p. 951, it is said:

"A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance. Accordingly, it will not bind the defendant where it is entered through intimidation, however slight; and a judgment is not properly entered on it where the court does not satisfy itself of the voluntary character of the plea. . . ."

The effective assistance of counsel, in my opinion, requires that counsel for an indigent defendant in a criminal case have at least sufficient time to consult and counsel with the accused individually and in private for a sufficient period of time to adequately apprise him of his constitutional rights.

Court-appointed counsel must perform certain functions as reported in *Miller v. Hudspeth*, supra:

". . . it is the duty of a defendant's counsel to determine what crime the facts, in his opinion, establish and to advise his client accordingly. That is one of the definite purposes of having counsel. A layman is not presumed to know

the legal technicalities involved in a charge of murder or manslaughter in the various degrees. . . ." (pp. 705, 706.)

The court there further stated that one of the most important reasons for requiring counsel is to protect the defendant from pleading guilty to a charge which the evidence does not establish.

In my opinion the lower court was correct in its order discharging the petitioner from imprisonment when it concluded and held "The defendant was not fully nor adequately advised of his constitutional rights at the time of his arraignment and plea of guilty in the district court on June 28, 1963."

It is respectfully submitted the judgment of the lower court should be affirmed.

FONTRON, J., dissenting: I am not concerned over the failure to have counsel appointed for petitioner at the time of his preliminary examination. This court has consistently held that the preliminary hearing is not a critical stage in the trial process (see cases cited in the court's majority opinion) and I see nothing in the circumstances of this case which would warrant any deviation from our previous holdings.

Nor do I discern any infringement upon the petitioner's basic rights simply because he negotiated with the county attorney without benefit of counsel. This is a common practice, frequently employed by habitual offenders. No reason is suggested why this conviction should be set aside merely because the accused may have jockeyed with the prosecutor for a favorable position.

So far as the record discloses, the petitioner was deprived of no substantial right because of his dealings with the prosecutor's staff. This is not a case where it appears that the petitioner was prejudiced or that some fundamental or constitutionally guaranteed right was denied him because of such negotiations. Had it developed that, after petitioner was refused counsel, a confession or any incriminating statement was obtained through the negotiation process and had an attempt then been made to use that confession or statement against petitioner, a different problem might be posed.

In my judgment, a more serious question is presented in connection with the second finding of the trial court. This finding is as follows:

"The defendant was not fully nor adequately advised of his constitutional rights at the time of his arraignment and plea of guilty in the district court of June 28, 1963."

Under our long-established and well-defined rule, we are not at liberty to disregard this finding, if there is any substantial, competent evidence on which it can be sustained. (*Nichols Co. v. Meredith*, 192 Kan. 648, 391 P. 2d 136; *Green v. Kensinger*, 193 Kan. 33, 392 P. 2d 122.)

From the evidence quoted by Justice Schroeder in his dissenting opinion, it appears evident that the petitioner's legal representation in district court at the time of his arraignment and plea of guilty was casual at best. This is no reflection upon the professional ability or integrity of Mr. Loftus, who was appointed to represent the petitioner, for he was provided the scantiest opportunity to advise with his client.

The record discloses that counsel was not appointed for the petitioner until he and two other prisoners were brought into court for their arraignment, and that Mr. Loftus was thereupon appointed to represent all three men. The only consultation had between Loftus and the petitioner took place in the presence of the other two prisoners while all three were seated on a bench in the courtroom. The petitioner testified that he spoke with Loftus for approximately twenty to thirty seconds at four different times, while Loftus himself testified that this "was all very rapid." As shown by the record, Mr. Loftus also testified as follows:

"We did not discuss his offense at all, because he was talking then about pleading guilty. When I found out that he had a previous conviction for the same particular crime, it was my estimation then that he knew pretty well what his constitutional rights were concerning this particular crime."

I cannot believe that this is the sort of representation by counsel contemplated by G. S. 1961 Supp., 62-1304 (now K. S. A. 62-1304). A procedure which precludes more than a token representation of an accused by his appointed counsel clearly fails to measure up to the purpose and requirements of our statute as well as to the constitutional requirements of due process.

No attorney, appointed at the last minute to represent a defendant about to be arraigned and who has no opportunity to consult with his client fully and freely in private, can satisfactorily advise and counsel with his client, no matter how competent a lawyer he may be. A prisoner, whose counsel has been appointed only to take his client through the formalities and to give effect to a deal already made with the county attorney, can hardly be said to have been provided counsel to inform him of and to protect his constitutional rights.

However, I do not approve of or agree with the action of the trial court in ordering the petitioner discharged from imprisonment. The error which I believe inhered in the proceedings leading up to and continuing through the arraignment and sentencing of the petitioner cannot be said to justify his complete exoneration, or his absolute release. In all justice, such error should require only that the sentence be set aside and the petitioner granted a trial, not that the petitioner escape trial entirely.

In *Dunfee v. Hudspeth,* 162 Kan. 524, 178 P. 2d 1009, this court held:

"In habeas corpus proceedings by an inmate of the state penitentiary, where the record discloses a plea of guilty and sentence under circumstances not in accord with due process of law, the plea and sentence are set aside and the petitioner is remanded to the trial court for further proceedings in harmony with law." (Syl. ¶ 2.)

In my view, a similar disposition should be made of this appeal.

K. S. A. 60-1507 (*b*) provides in part:

". . . If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

To me, it seems wholly inappropriate for the trial court, after vacating the sentence, to have ordered the petitioner discharged. In my judgment, the appropriate action would have been to grant him a new trial.

In my opinion, the record contains substantial, competent evidence to support the trial court's second finding. For this reason, I respectfully dissent from the majority opinion and I would remand this case with directions that further proceedings be had, in harmony with the views herein expressed and as provided by law.