CHARLES EATON KEITH v. WILLIAM EATON *et al.*

No. 10243.

1. INTERPRETATION OF WILL — *as to words, to be according to law of domicile, if not contrary to law of forum and if consistent with circumstances of testator and instrument as a whole.* The interpretation of a foreign will, as to the meaning of words used in it, is to be ascertained by the law of the testator's domicile, unless the circumstances surrounding the testator, or the language of the instrument as a whole, requires a different interpretation, or unless an interpretation by the law of the testator's domicile will contravene the law of the state in which it is offered for record and probate.

2. ———— hence, *"heirs of his body," in a will made in Missouri by one domiciled there, does not pass Kansas lands to illegitimate child, though recognized by the father.* The statute of Missouri disables an illegitimate child from inheriting from the father, except under the conditions of intermarriage by the parents and recognition of the child by the father; but the statute of this State invests an illegitimate child with the quality of inheritance from the father if the child has been recognized by him as his. *Held,* that where a will executed in Missouri, by a person domiciled there, devises a life estate in lands in that State and in three other states, including Kansas, to the testator's son, with remainder "to the heirs of his (the son's) body," the testator will

be presumed to have used the words "heirs of his body" in accordance with the law of his domicile; and, hence, that an illegitimate child of his son, born after the testator's death, though duly recognized by the father in compliance with the laws of this State, is not entitled under the will to take the lands in this State along with the legitimate lineal descendants of the son.

Error from Johnson District Court. Hon. John T. Burris, Judge. Opinion filed December 11, 1897. *Affirmed*.

*I. O. Pickering*, for plaintiff in error; *T. F. Garver*, of counsel.

*McGrew, Watson & Watson, F. R. Ogg* and *S. T. Seaton*, for defendants in error.

Doster, C. J.   William Eaton resided in Missouri. He was the owner of lands in that State and in Illinois, Colorado and Kansas. In 1877, he executed a will disposing of his property. By the terms of this will a life estate in all his lands was devised to his son Lanson, with remainder to the "heirs of his [Lanson's] body." In 1880, the testator died, at his residence in Missouri. His will was probated in that State, and subsequently, in 1884, was proved and admitted to record in the probate court of Johnson County in this State, in which county the Kansas lands are situate. Lanson, the son, resided in this State, during all the times mentioned, until 1883, in which year he died, leaving a wife, a son by her, and two grandchildren, the issue of a deceased daughter of himself and wife. The plaintiff in error, Charles Eaton Keith, is an illegitimate son of the deceased Lanson Eaton, born in 1881, after the death of William Eaton, the testator before named. In 1882, his father, in writing, duly recognized him as his child. He brought this action for a partition, between himself and the other lineal descendants of Lanson Eaton, of the lands in Kansas

devised by his grandfather, William Eaton, as before stated, "to the heirs of his [Lanson's] body." The court below rendered judgment against him, and this proceeding was brought to reverse that judgment.

The statute of Missouri, unlike ours, does not vest an illegitimate child with inheritable qualities, except under the conditions of intermarriage between the parents and the father's recognition of the child as his. Section 4474 of the Revised Statutes of that State reads: "If a man, having by a woman a child or children, shall afterwards intermarry with her, and shall recognize such child or children to be his, they shall thereby be legitimated." The question for decision is the meaning to be given to the descriptive words, "heirs of his body," contained in the will of William Eaton. The plaintiff in error contends that he is one of the class to whom the devise was made. The defendants in error contend to the contrary.

The law always gives effect to written instruments according to the intention of those who executed them. Its first object, therefore, is to ascertain the sense in which the words of an instrument were used. In this case the subject of interpretation is the will of William Eaton. It is not that of the statute, either of Kansas or of Missouri. Both statutes, in respect to the investiture of illegitimate children with inheritable qualities, are plain in meaning, and require no construction. It is not a question as to which of these statutes shall govern in the transmission of the property in dispute. Neither of the contending parties claims under the statutes. If they did so claim the dispute could be easily settled. The law of the state in which land is situated invariably governs its disposition. We may look to the statutes both of Kansas and Missouri, as we may conceive William Eaton looked, to ascertain the meaning of the words of his

will, but we cannot look to either of them as dispositive, *ex vi termini*, of the rights of the parties.   Therefore, the question propounded by counsel for plaintiff in error, in the opening paragraph of their brief, is not accurately phrased.   They ask : " Do the laws of Missouri, or of Kansas, govern in determining what persons are devisees of lands situated in Kansas, who are designated in a will, made in Missouri by a resident of that State, simply as heirs of the body of a son of the testator to whom a life estate in the lands is devised?"   It should rather be : " Will a testator residing in Missouri, and owning lands in that and other states, and devising them to the heirs of the body of his son, be presumed to have used the descriptive words, ' heirs of the body,' in accordance with the law of his domicile, or the laws of the states where the lands are situated?"

That William Eaton might lawfully have devised his land in this State to whomsoever he chose, saving the rights of his wife, will not be disputed.   He might have devised it to the lawful or to the illegitimate heirs of his son Lanson, the one class to the exclusion of the other, and the excluded class could have had no ground of complaint.   It must, therefore, be apparent that the contention, correctly analyzed, reduces itself to the question above stated.   To this question but one answer, in the light of the authorities, can be returned. In the absence of a contrary meaning, to be gathered from the circumstances surrounding a testator or from the instrument as a whole, the sense of the words used by him is to be ascertained in the light of the law of his domicile.   Presumptively, he is more familiar with that law than with the law of other jurisdictions.   That is the law which is constantly with him, controlling his actions and defining his rights, and

1. Will interpreted according to law of domicile, unless.

more naturally than any other law would be present to his mind in the drafting of an instrument dispository of his property.

Greenleaf, in his work on Evidence, (Vol. 2, § 671), says:

"In the interpretation of wills, whether of movable or immovable property, where the object is merely to ascertain the meaning and intent of the testator, if the will is made at the place of his domicile, the general rule of common law is that it is to be interpreted by the law of that place at the time when the will was made. Thus, for example, if the question be, whether the terms of a foreign will include the 'real estate' of the testator, or what he intended to give under those words; or whether he intended that the legatee would take an estate in fee or for life only; or who are the proper persons to take under the words 'heirs at law' or other *designatio personarum*, recourse is to be had to the law of the place where the will was made and the testator domiciled."

To the same effect are Story on Conflict of Laws (8th ed.), § 479*h*; 3 Am. & Eng. Encyc. of Law, 637–641; *Guerard v. Guerard*, 73 Ga. 506; *Ford v. Ford*, 70 Wis. 19; *Lincoln v. Perry*, 149 Mass. 368.

Counsel for plaintiff in error criticize these authorities because they fail to note the distinction between bequests of personal property and devises of real estate. They admit the former to be controlled by the law of the testator's domicile, but contend that the latter are controlled by the law of the place where the land is situated; and they claim the contrary authorities to be an accumulation of *dicta* running back to *Harrison v. Nixon* (9 Peters 483), in which Mr. Justice Story, having under consideration the interpretation of a will of personalty, remarked upon the application of the rule to both classes of property. Whether or not the origin of the rule be in a *dictum* merely, it has not been continued as such, but since

*Harrison v. Nixon* it has been repeatedly applied to the necessary facts of cases, and may now be regarded as well established. Nor does it militate against the doctrine that the disposition of real estate by will is governed by the *lex loci rei sitæ*. The rule of the cases cited does not give extra-territorial effect to the laws of a foreign jurisdiction; it gives effect only to the intention of the testator.

A state may lawfully declare who shall or shall not be devisees of its lands, or how devises of its lands may be executed and authenticated, or by what rules of construction the intention of devisors shall be ascertained, and a will lacking conformity to such regulations may not be given effect by it. But in none of these respects, as related to the case before us, has this State declared a policy; it has not said that the intent of a non-resident testator, as to the recipients of his bounty, may not be ascertained by reference to the law of his domicile.

It is true the plaintiff in error, in consequence of the written recognition by his father, became, under our statutes, possessed of inheritable qualities,—became an "heir of the body" of his father, as to lands owned by the father in this State; but 2. "Heirs of his body," does not he did not become such under the laws pass lands under Missouri will, of Missouri, where the owner of the land when. in question lived, and where other of the devised lands are situated. He could only become such as to those lands by the intermarriage of his parents (§ 4474, Revised Statutes, Missouri, 1889) ; and it so happens that the laws of Illinois and Colorado, where the remainder of the lands lie, are, in this respect, the same as those of Missouri. Starr & Curtis's Ann. Stat. (Ill.) Vol. 1, ch. 39, ¶ 3; General Statutes, Colorado, 1883, ¶ 1045.

Had the laws of the two States last named differed

from those of Missouri and from each other, the will of William Eaton, under the theory of plaintiff in error, would be subject to four different constructions, and be given effect in four different ways. The possibility of such contrariety of construction and varying effect, furnishes the reason for giving over to the law of a testator's domicile the interpretation of his will, unless to do so contravenes the law of the place where the will is probated. Story, in his Conflict of Laws, *supra*, thus aptly instances the rule and its reason :

"'Thus' (to borrow an illustration from Mr. Burge), 'in case the limitation of a deed or will were made in England in favor of the heir of A, a person who had no children, and the settler or testator has property in England, Jamaica and British Guiana, if the construction of the term 'heir' was to be in conformity with the law of England, the father of A would take ; if according to the law of Jamaica, the eldest brother, and if according to the law of British Guiana, his father, brothers and sisters would take his movable property. It is not to be presumed that he used the expression in three different senses, or that he adopted the legal import given it by the law of one place, rather than that given it by the law of either of the other two places. But if his domicile were in England there is the presumption that he was acquainted with the sense attached to it by the law of England, and that he used it in this sense.'"

It is said, however, that we are under the compulsion of a statutory rule to construe this will in favor of the plaintiff in error. The statute reads : " When lands, tenements or hereditaments are given by will to any person for his life, and after his death to his heirs in fee or by words to that effect, the conveyance shall be construed to vest an estate for life only in such part taken, and a remainder in fee simple in his heirs." Gen. Stat. 1889, ¶ 7256. This statute abrogates the famous Rule in Shelley's Case. In that case,

decided in the time of Lord Coke, it was held that if an estate for life be given to one, with remainder to his heirs, the first taker should have the fee, and the heirs should take by descent from him. Hence, if the first taker made disposition of the fee, the heirs took nothing upon his death, because there was nothing to descend to them ; and this is everywhere the common law. Tiedeman on Real Property, § 433. The purpose of the statute quoted was to so change the rule as to vest in the heirs an estate by purchase, as it were, instead of one by descent, and thus to give effect to the supposed intent of the donor. The statute does not define the term " heirs," nor extend a testator's bounty to all classes of his heirs, nor limit it to one class to the exclusion of others. It was enacted for the purpose of changing contingent remainders into vested estates, and not to declare in whom, as against others, such estates should vest.

It is argued that the definition of the word "heirs" in *Caldwell v. Miller* (44 Kan. 12) forces the court to a view of this case opposite to the one taken. This is incorrect. The laws of Congress cast upon the heirs of a deceased pre-emptor the equitable title to the land entered by him. The common law disables an illegitimate from inheriting from his father ; but inasmuch as the common law has not been adopted by Congress, and Congress has not defined the word "heirs," it was held that the meaning of the word must be ascertained by reference to the laws of this State. The illegitimate was therefore allowed an interest in the pre-empted land. The difference between the two cases is plain. In the one, the meaning of the word is unascertainable except in the light of the law of this State ; in the other, as used by the testator, it is best ascertainable in the light of the law of his own State. In the one case, the lack of definition in the

Federal law is tantamount to a reference of the subject by Congress to the states in which the land lies, to be determined in accordance with their own legislation. In the other case, the existence of a definition of the term in the law of the testator's domicile raises a presumption that it was used by him in the sense of that law.

It is also to be observed that the plaintiff in error was not born until four years after the execution of the will under which he claims, and was not born until months after the testator's death. Of the possibility of his birth we cannot presume the testator had knowledge, neither can we conceive that the testator understood as a fact that the will made provision for the illegitimate offspring of his son. William Eaton might have been willing that an illegitimate son of Lanson Eaton, legitimated, in compliance with the laws of Missouri, by subsequent intermarriage with the mother, should partake of his bounty, and at the same time might have been unwilling that Lanson Eaton should beget illegitimate offspring, and then, by mere recognition of them in compliance with the laws of a foreign jurisdiction, make them sharers of his estate. The laws of Missouri do not contemplate such a thing. By requiring subsequent intermarriage with the illegitimate's mother as a prerequisite to legitimation and heirship, the Legislature of Missouri intended to preclude legitimation and heirship by mere recognition, and the same intention must be presumed to have been present in the mind of William Eaton when he made his will; and if he intended to include illegitimates at all, he must be presumed to have intended to include only those who should be made legitimate by compliance with the statutes of his own State, i. e., by the intermarriage of the father and mother.

The judgment of the court below is affirmed.