IN RE ESTATE OF ROBERT TAYLOR.
GEORGE R. DeSOE, APPELLEE, V. FRANK TAYLOR, EXECUTOR,
ET AL., APPELLANTS.

IN RE ESTATE OF MINERVA TAYLOR.
GEORGE R. DeSOE, APPELLEE, V. FRANK TAYLOR, ADMINIS-
TRATOR, ET AL., APPELLANTS.
285 N. W. 538

FILED APRIL 28, 1939. NOS. 30568, 30569.

*Beatty, Maupin, Murphy & Derry,* for appellants.

*William P. Mullen, Harold A. Prince* and *E. E. Richards,*
contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.
The parents of an adopted son having died, he claimed
to be an heir and distributee in the estates of his adoptive
mother's parents. The county court rejected his claim
against each of said estates. He appealed to the district
court, and there filed amended petitions setting up his
rights. General demurrers filed by other heirs were over-
ruled. The demurrants electing to stand upon their de-
murrers, and refusing to answer, or to plead further, the
district court entered judgments in both cases in favor
of the plaintiff, decreeing that said plaintiff was an heir of
his adoptive grandparents, and entitled to the same share
in their intestate estates as his deceased adoptive mother

would have taken therein had she survived her said parents. Defendants appeal.

The only issue presented in these cases in the court below was one of law, to wit: Whether an adopted child will inherit the same as a natural child from the ancestors of his adopted parent, where the death of such adopted parent occurred prior to the death of such ancestors.

George R. DeSoe, the plaintiff herein, was given the name of Richard Coffee at birth. His natural mother left him at a hospital in Kansas City, Missouri, and instructed the superintendent to find a home for him.

On January 18, 1910, James A. DeSoe and his wife, Maude B. Taylor DeSoe, applied to the juvenile court of Jackson county, Missouri, to adopt the plaintiff herein, who was then about eight months of age. On January 31, 1910, the said juvenile court entered an order, finding that the plaintiff was a neglected child, and on March 21, 1910, committed him to their care and custody.

The Revised Statutes of Missouri 1909, art. I, ch. 20, sec. 1671, then in force, provided that adoption should be by deed duly executed and acknowledged by the person adopting a child, and section 1672 provided that a married woman may join in said deed with her husband. In strict accordance with said statute then in force, James A. DeSoe and his wife, Maude B. Taylor DeSoe, executed and acknowledged such deed of adoption, with the intention of adopting said child, the plaintiff herein, as their own, under the name they then selected for him, to wit, George R. DeSoe. and thereupon took him to their home in Cairo, Hall county, Nebraska, where he grew up as their son. His adoptive mother, Maude B. Taylor DeSoe, died when he was about five years of age, leaving no other child than this adopted son. Some years thereafter his adoptive father, James A. DeSoe, also died, and he brought action for a share in such estate. This action was brought to this court, and in an opinion by Chief Justice Goss, released April 1, 1938, it was held that the plaintiff herein would share as a son in his adoptive father's estate. Other and additional facts

may be found set out in the record and in that opinion, entitled *In re Estate of DeSoe,* 134 Neb. 371, 278 N. W. 852. It may be accepted that this opinion settled the question that George R. DeSoe, the plaintiff herein, was the legally adopted son of Maude B. Taylor DeSoe, for in the trial on the objections to the final report of the administrator in the district court the case was treated as an equity case, with a jury to find the facts. Judge Kroger submitted to the jury the one question, and the verdict determined that there was a deed of adoption, as provided by the laws of Missouri, duly executed and acknowledged by James A. DeSoe and Maude B. Taylor DeSoe, with the intention thereby to adopt Richard Coffee, the claimant, who is now known as George R. DeSoe. This verdict and the decision of our court settled this question definitely.

Section 43-109, Comp. St. 1929, adopted in 1897, reads as follows: "Unless the terms and conditions in such consent and petition otherwise provide, the person or persons adopting, and the child adopted shall after adoption, sustain toward each other the usual relation and the adopted child shall have bestowed upon him or her equal rights, privileges and immunities of children born in lawful wedlock, of parent and child, and shall have all the right and be subject to all the duties of that relation, and the parents of such adopted child shall thereafter stand relieved of all parental duties toward, and all responsibility for, said minor child and shall have no right over it."

In the opinion on rehearing in *Ferguson v. Herr,* 64 Neb. 649, 659, 90 N. W. 625, 94 N. W. 542, Commissioner Kirkpatrick said: "The other question suggested relates to the spirit that should govern in the adjudication of controversies arising under the provisions of adoption statutes, whether they shall be construed strictly, as in derogation of the common law, or liberally, as being laws humane and beneficent in their intendments and provisions, intimately involving the interests of those who by nature are helpless, and unable by reason of inherent limitations to see to the strict observance of every detail of the statutory

procedure. * * * Adoption statutes are peculiarly beneficent and altruistic. Their purpose is wholly humane. By reason of their enactment, much misery, otherwise inevitable, has been prevented, and the happiness, of a most permanent and lofty character, thereby engendered is practically incalculable. Childless parents have been provided with objects upon which to bestow their affections, and orphans have been snugly entrenched in homes of comfort and even of luxury, brought thereby under the most valuable of influences, and, perchance, saved from swelling the ranks of the vicious and criminal."

While it is always difficult to find a case exactly in point, we have found several which throw light upon the questions involved in the case at bar. *Alexander v. Samuels*, 177 Okla. 323, 58 Pac. (2d) 878, involved property originally allotted to Nancy Alexander, a full-blood citizen of the Creek Nation. It was held that her adoption was, in fact, made and the papers lost; that said adoption might be proved by parol evidence. It is said that ordinarily a child is the result of the union of a man and woman, but this is by no means exclusive nor universal when viewed from the purely legal aspect; that from the earliest times among ancient barbarians, also among Jews, and especially among the Romans, the rights of adopted children were respected; that with the rise of feudalism those rights were restricted, but that the pendulum has now swung to a more liberal attitude, until today statutes of adoption create the relation of parent and child, very similar in its legal aspect to the natural relationship.

As set out in section 1712, Okla. St. 1931, it purports to confer upon an adopted child, in so far as his adoptive parents are concerned, all of the rights that he could have had under the law had he been born to them as the result of a marriage union, and the court concludes that a child adopted pursuant to the statute of Oklahoma is to be considered as born in lawful wedlock to such adoptive parents, with exceptions contained in another section, and it is held that, unless intentionally omitted, grandchildren will inherit as provided in said law.

In *Brooks Bank & Trust Co. v. Rorabacher,* 118 Conn.
202, 171 Atl. 655, in the adoption agreement it was pro-
vided that the said child shall have the same rights as to
property and inheritance that he would have if he were
a legitimate child.  In this case it is said that the right
to inherit from collateral kin of adoptive parent is not to
be readily implied from the relation, and is to be recog-
nized only if expressly conferred.  It says that there is no
ground for any different rule as to application of statutes
clearly conferring rights of inheritance from the relatives
of the parents of such adopted child, and that grandchildren
of person adopted in Connecticut in 1870 are held en-
titled to inherit estate of the adoptive parent's sister, who
died in Connecticut in 1930.

In Rhode Island, Gen. Laws 1923, ch. 288, sec. 6, pro-
vides generally that an adopted child shall be deemed, for
the purposes of inheritance by such child, the same as if
he had been born to them in lawful wedlock, except that
he cannot take property expressly limited to the heirs of the
body.  The adoption, being under the statute of Massachu-
setts, which was similar to the statute of Rhode Island,
both being in derogation of the common law, held to be
strictly construed.  It was held in *Smith v. Bradford,* 51
R. I. 289, 154 Atl. 272, that, as nothing appears in the will
to limit the legal import of the word "issue," the word
thus used included all descendants, and as the statute of
adoption gives to an adopted child the status of a descend-
ant, the adopted child was entitled to the fund.

The case of *In re Walworth's Estate,* 85 Vt. 322, 82 Atl.
7, 37 L. R. A. n. s. 849, Ann. Cas. 1914C, 1223, tells us
that under the civil law in Rome all the property of the
adopted son belonged to the adoptive father, and Lord
Mackenise, in his work on the Roman Law, p. 131, says:
"Augustus did not adopt Tiberius, who succeeded him in
the Empire, till Tiberius had adopted his nephew Germani-
cus; and the effect of this was that Tiberius became the
son and Germanicus the grandson of Augustus at the same
time."  It is said that where there is a legal child there is a

legal father, and cites the case of *Humphries v. Davis*, 100 Ind. 274, 50 Am. Rep. 788, in which the court said it was not to be presumed that the legislature meant to violate logical rules by creating the legal relation of child without the corresponding one of parent.

*In re Book*, 90 N. J. Eq. 549, 107 Atl. 435, it was said: "Applying this rule, we are of opinion that the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which, by the act concerning wills, the statute of descents, and the statute of distribution, had been conferred upon children born in wedlock. * * * To give this legislative purpose its full significance, the meaning of the words 'child,' 'children,' and 'issue,' wherever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be considered to have been enlarged so as to include adopted as well as natural-born children within their scope."

In the case of *Cave's Estate*, 326 Pa. St. 358, 192 Atl. 460, it is said that the right of adopted children to inherit from kindred of adoptive parents is entirely statutory, and because the call of the blood is a firmly rooted instinct courts tend to strictly construe such legislation. After reviewing many of the decisions, it was held by the Pennsylvania court that, in spite of the somewhat confused state of judicial expression in regard to this subject, the court has no hesitancy now in deciding that the intestate act of 1917 permits of no reasonable construction other than that by its terms an adopted child has the same right of inheritance from the collateral kindred of his adoptive parents as a natural child of such parents would have. "It is urged that a person should not be permitted, through the expedient of adopting a child, to attach a stranger to the family tree, so as to enable that stranger to share in the estate of the adoptive parent's collateral relatives. The answer to this argument is that if a decedent does not wish such a 'stranger' to share in his estate, he can make a will accordingly. Be this as it may, it is not our function

to approve or disapprove the policy embodied in legislative enactments, but merely to interpret their meaning, and, in the present case, when we examine the successive statutes historically and analytically, steadily broadening as they do the status of adopted children, it is clear, in our opinion, that the rights of such children now include that of inheritance from the estates of collateral kindred of their adoptive parents."

Our attention is called in the brief of appellants to the case of *Estate of Bradley,* 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1, in which the deceased died intestate, leaving an estate in excess of $4,000,000. He had never married, and the only heirs left surviving him were a surviving daughter of one of his brothers and an adopted son of another deceased brother, and the Wisconsin court held that the adopted son of his brother could not inherit any part of this estate, saying that the appellant is not related to him in any manner, neither by ties of blood nor by contractual relations, for the adopted child is not constituted an heir of collateral kindred of adoptive parents. In this case it is held that a statute which interferes with the rule that property of an intestate should descend to kindred of his blood, or interrupts the natural course of descent, should be strictly construed, and that the legislature must use explicit and unmistakable language in such a case. It is clear that the Wisconsin court, as well as the South Dakota court in the case of *In re Eddins' Estate,* 279 N. W. 244, are both governed by a rule of strict construction of the statute, and therefore these cases cannot govern the holding of this court, where the tendency of all of our decisions has been towards a very liberal construction of the law in all cases of adoption. The thought back of the Nebraska decisions has been to give exactly the same rights and privileges to an adopted child which a natural child has. One of the rights of a natural child is to inherit from a grandparent through his parent. If the adopted child does not have that right, then it has been denied a right or privilege which the natural child has. *In re Masterson's Estate,* 108 Wash.

307, 183 Pac. 93; *In re Waddell's Estate,* 131 Wash. 566, 230 Pac. 822.

The Nebraska case of *In re Estate of Enyart,* 116 Neb. 450, 218 N. W. 89, exhaustively goes into all questions relating to the rights of adopted children in the state of Nebraska. The adopted son, Logan Enyart, died intestate and unmarried, leaving land and personal property. The question arose, did the adoption proceedings deprive his natural father of the right to inherit from this son? and for the first time in this state the question arose whether Katherine Enyart, who had adopted him in 1903, would inherit his property, or his parents, who had relinquished all rights to custody and control of him at the time of his adoption. It is said that the law governing adoption varies in each state, and Judge Good said that he had found no statute of any other state that is precisely like the laws in Nebraska, and therefore the decisions of other courts could not be taken as a safe guide to a decision here. He says that, if there are no restrictions or limitations or conditions in the adoption, then our statute of adoption creates the legal relation of parent and child, and gives to the adoptive parent and the adopted child all of the rights that pertain to that relation by virtue of the statute of descent, and that his natural father, by his voluntary act in surrendering all rights to the child, transferred from himself to Katherine Enyart, the adoptive mother, the right to inherit from the adopted child, Logan Enyart.

In the case of *In re Estate of Grinnell,* 117 Neb. 332, 220 N. W. 583, it was held that adopted children have the right to inherit from their adoptive parents, unless they were precluded therefrom by the terms and conditions of the proceedings by which they were adopted. In this opinion it is shown that the law of 1897 provided more liberally as to inheritance than had theretofore been the rule, because it provided that, unless there was a restriction in the adoption proceedings, the adopted child should inherit, whereas under the prior law in Nebraska it was provided that he should not inherit unless it was expressly provided in the adoption proceedings.

If a grandparent or an uncle, for instance, does not want the child thus adopted to share in his property, it is the easiest thing in the world to cut the child out by a paragraph in his last will. But if such a relative has not availed himself of the opportunity to cut out such person from his estate, it will be understood that the adopted child has the right of representation in exactly the same manner and to exactly the same extent as if such child had been begotten in lawful wedlock. *Denton v. Miller,* 110 Kan. 292, 203 Pac. 693; *In re Cadwell's Estate,* 26 Wyo. 412, 186 Pac. 499.

We hold that the Nebraska statutes, as construed by our decisions, intend that an adopted child shall have the same rights to inherit property that a natural child has; that all the rights and privileges of an adopted child shall be identical with those of a natural child. If our legislature had intended to place any limits upon such rights and privileges, it could easily have inserted them in the law of descent of property (Comp. St. 1929, sec. 30-101), and not having done so, we find no prejudicial error in the record, and the judgment of the trial court is

AFFIRMED.