IN RE ESTATE OF ELIZABETH TJADEN, DECEASED.
EDWARD HINRICHS, APPELLEE, V. DONALD MAMMEN ET AL.,
APPELLANTS, FRANK L. BRUNING, PERSONAL REPRESENTATIVE OF
THE ESTATE OF ELIZABETH TJADEN, DECEASED, ET AL.,
APPELLEES.
402 N.W.2d 288

Filed March 20, 1987.   No. 85-589.

Joe T. Vosoba of Steinacher, Vosoba & Hanson, for appellants.

Annette E. Mason of Ross & Mason, P.C., for appellee Hinrichs.

KRIVOSHA, C.J., BOSLAUGH, WHITE. HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

On September 14, 1973, when Elizabeth Tjaden executed her will, her sister Anna Lucht, and John Mammen, Elizabeth's brother, were alive, but the following were dead: Elizabeth's two brothers—Meino and George Mammen; her sister Tena Hinrichs; and Elizabeth's nephew Ervin Mammen, who was George Mammen's son.

When Elizabeth signed her will, there were five living sons of George Mammen—Leonard, Delbert, Donald, Wilber, and Edward Mammen, the Mammen brothers. Tena Hinrichs' three surviving children were alive when Elizabeth signed her will, namely, Dale and Edward Hinrichs and their sister, Mildred Margaret Cooke.

After Elizabeth had signed her will but before her death, the following died: John Mammen, Anna Lucht, Dale Hinrichs,

and Mildred Margaret Cooke. No child survived John Mammen, Dale Hinrichs, or Mildred Margaret Cooke, but children surviving Anna Lucht were her three children and eight grandchildren (children of Anna's two deceased children). Thus, none of Elizabeth Tjaden's brothers and sisters survived Elizabeth.

When Elizabeth Tjaden died in 1983, her will was admitted to probate in the county court for Thayer County. After the direction that all Elizabeth's estate be converted into cash, Elizabeth Tjaden's will provides:

THIRD. . . .

. . . .

F. All the balance and remainder of the proceeds and funds realized and obtained by the conversion into cash by my executors of all my real and personal property, I give and bequeath to the following persons and with shares therein as follows:

[1] To my brother John Mammen, a one-fifth (1/5) share thereof.

[2] To Harry Mammen, Clarence Mammen and Rozella Brower, the children of my deceased brother Meino Mammen: to each of them a one-fifteenth (1/15) share thereof.

[3] To my sister Mrs. Anna Lucht, a one-fifth (1/5) share thereof,

[4] To Mildred Margaret Cooke, Edward J. Hinrichs and Dale H. Hinrichs, the children of my deceased sister Tena Hinrichs: to each of them a one-fifteenth (1/15th) share thereof.

[5] To Leonard Mammen, Delbert Mammen, Donald Mammen, Wilber Mammen and Edward Mammen, sons of my deceased brother George Mammen: to each of them a one-thirtieth (1/30) share thereof.

[6] To Joan Mammen and Alice Mammen, daughters of my deceased nephew Ervin Mammen: to each of them a one-sixtieth (1/60) share thereof.

. . . .

FIFTH. In the event of the death in my lifetime of any beneficiary under this Will who is not survived by any

child or by a child or a deceased child of such beneficiary dying in my lifetime, who survive me, I direct that the share in my estate by this Will given to said beneficiary dying in my lifetime shall not lapse, but shall descend to my brothers and sister who survive me, in equal shares, and to the child or children of deceased brothers and sisters of mine who survive me, by right of representation, and to the child or children of a deceased child of a deceased brother or sister of mine who survive me, also by right of representation.

Edward Hinrichs, son of Tena Hinrichs and survivor of Mildred Margaret Cooke and Dale Hinrichs, filed an "Application for the Construction of the Will of Elizabeth Tjaden." In his application, Edward Hinrichs asserted that, pursuant to paragraph THIRD F[4] of the will, he was entitled to a $1/15$ share of Elizabeth Tjaden's estate, and, in accordance with paragraph FIFTH of the will, was also entitled to the separate $1/15$ shares devised to Mildred Margaret Cooke and Dale Hinrichs, both of whom had predeceased Elizabeth. After an evidential hearing establishing the relationships and the priority of deaths concerning Elizabeth's devisees who had predeceased Elizabeth, the county court entered its order of distribution, stating:

The Court then turns to the determination of the intent of the decedent, that is, construction of Paragraph FIFTH. This Court is of the opinion that the clear intent of the testator was to provide for a division by a "per stirpes" division among identified beneficiaries, their issue or descendents. Clearly, the decedent intended to divide her estate, after specific requests [sic], equally among her brothers and sisters and the issue of deceased brothers and sisters or the issue of deceased issue of deceased brothers and sisters. At the time of the making of her Will, she knew that only one brother, John Mammen, and one sister, Anna Lucht, could survive her. Therefore, if her intent was to divide her estate into shares based on brothers and sisters who survived her, then she could have easily provided that her estate be divided equally between John Mammen and Anna Lucht, or the survivor of those

two if one would predecease her. She could then have provided that if both John Mammen and Anna Lucht predeceased her, then the estate would have been divided in the next degree of kinship, namely, her nieces and nephews . . . . However, she did not do this. She provided for an equal share to her brother and sister, John and Anna, "<u>and</u> to the child or children of deceased brothers and sisters of mine who survive me, by right of representation." By using the word "<u>and</u>," she clearly intended to divide the share of predeceased beneficiaries based on the number of brothers and sisters she had originally had with the children of her predeceased brothers and sisters sharing that share that their mother or father would have received. . . . The intent of the testator herein, Elizabeth Tjaden, clearly is . . . to utilize the term "right of representation" as actually a division "per stirpes" among the issue or descendants or identified relatives, namely, her five brothers and sisters. . . . The decedent further provided that also by right of representation (i.e. per stirpes), that if nieces or nephews who were issue of her predeceased brothers and sisters were likewise deceased, then their children would share in [sic] a per stirpes basis.

The Court, therefore, holds that by utilizing the term "right of representation," the decedent clearly intended descent by a per stirpes method.

Having resolved the issue of the intent of the testator, the Court then turns to actual distribution. The Court finds that the share of John Mammen does not lapse, but rather is divided into four shares equally and then distributed to the issue of Meino Mammen, Anna Lucht, Tena Hinrichs and George Mammen, per stirpes. The Court finds likewise that the share of Mildred Margaret Cooke and Dale H. Hinrichs respectively do [sic] not lapse but are instead to be divided into equal one-fourth shares of distribution to the issue of Meino Mammen, Anna Lucht, Tena Hinrichs and George Mammen on a per stirpes basis. Distribution of the one-fifth share of John Mammen and distribution of the 1/15th share of Mildred

Margaret Cooke and Dale H. Hinrichs are therefore to be distributed by the personal representatives in accordance with this order. There is no basis for distribution of the shares of Mildred Margaret Cooke and Dale H. Hinrichs to [Edward] Hinrichs.

Edward Hinrichs appealed to the district court, claiming he was "entitled to inherit the shares of his deceased brother and sister [Dale Hinrichs and Mildred Margaret Cooke]." The "Judge's Minutes" of the district court contain the following excerpt:

Even though paragraph FIFTH of the will is ambiguous, it is consistent and can be read to agree with paragraph THIRD (F). There can be no doubt that she [Elizabeth Tjaden] intended that no devise should laspe [sic].

. . . [Paragraph THIRD] clearly expresses that she intended to give her property to her brothers and sisters, and to their issue, equally. It is difficult to imagine that she would have thought differently just because a niece & nephew died without issue.

The "Journal Entry" corresponding to the same date as the "Judge's Minutes" recites:

[T]he Court finds for appellant Hinrichs.

Tena Hinrich's [sic] issue take one-fourth (1/4) and Anna Lucht's issue take one-fourth (1/4), George Mammen's issue take one-fourth (1/4) and the issue of Meino Mammen take one-fourth (1/4).

The Personal Representative is hereby ordered to distribute said shares in accordance with this finding. In so far [sic] as the County Court's finding is in conflict with this determination, the same is so modified.

The district court's order is slightly ambiguous in its statement: "Tena Hinrich's [sic] issue take one-fourth." To what the "one-fourth" refers is uncertain. However, as will be illustrated in this opinion, the 1/4 declared by the district court refers to Edward Hinrichs' share in Elizabeth Tjaden's total estate, and necessarily includes Edward Hinrichs' acquisition of the entire distributive shares devised to Dale Hinrichs and Mildred Margaret Cooke. Otherwise, as will be shown, Edward Hinrichs' 1/4 of the combined Dale Hinrichs-Mildred Margaret

Cooke distributive shares coincides exactly with the county court's order, which the district court modified as requested in Edward Hinrichs' appeal.

In the appeal to this court, all parties agree that John Mammen's share should be divided into fourths and distributed as part of the devises to the children of Anna Lucht, Meino Mammen, George Mammen, and Tena Hinrichs, so that such distribution will ultimately be made on a per stirpes basis. With the exception of Delbert, the Mammen brothers have appealed the district court's judgment, contending that John Mammen's $1/5$ share, as well as the shares of Dale Hinrichs and Mildred Margaret Cooke ($1/15$ to each), should be distributed among the children of Anna, Meino, George, and Tena "by right of representation" in accordance with the county court's order for distribution. Brief for Appellants at 13. Edward Hinrichs maintains that he alone should take the shares of Dale Hinrichs and Mildred Margaret Cooke "as the only living representative of Tena Hinrichs' share of the estate." Brief for Appellee at 10.

Conditioned on survival of all devisees under paragraph THIRD F of Elizabeth Tjaden's will, and with 60 as the common denominator for the fractions expressed in paragraph THIRD F of that will, the following shares are taken under Elizabeth Tjaden's will:

(1) John Mammen, $12/60$;

(2) Children of Meino Mammen, $12/60$, that is, a $4/60$ share to each of Meino's three children;

(3) Anna Lucht, $12/60$;

(4) Children of Tena Hinrichs, $12/60$, that is, a $4/60$ share to each of Tena's three children;

(5) Children of George Mammen, $10/60$, that is, a $2/60$ share to each of George's five children; and

(6) Children of Ervin Mammen, $2/60$, that is, a $1/60$ share to each of Ervin's two children.

The effect of the district court's judgment was recognition of a $15/60$ interest taken by Edward Hinrichs as the sole survivor of Tena Hinrichs and the survivor of Mildred Margaret Cooke and Dale Hinrichs, Tena's children. As an analysis of the district court's decision, Edward Hinrichs' share includes $1/4$ of John Mammen's share, or a $3/60$ share ($1/4$ of $12/60$), plus $8/60$

(combined $4/60$ shares of Mildred Margaret Cooke and Dale Hinrichs) and the $4/60$ ($1/15$) share taken outright by Edward Hinrichs as Tena Hinrichs' child. In that manner, Edward Hinrichs, according to the district court, was entitled to a $15/60$ share, $1/4$, or 25 percent, of the estate of Elizabeth Tjaden, deceased.

However, if the county court is correct, as the Mammen brothers contend, Edward Hinrichs' share of Elizabeth Tjaden's estate is not 25 percent but 15 percent, that is, $1/4$ of John Mammen's share, or a $3/60$ share, and Edward Hinrichs' outright $4/60$ ($1/15$) share, plus Edward Hinrichs' share based on a per stirpes distribution of the combined shares of Dale Hinrichs and Mildred Margaret Cooke, which is $1/4$ of $8/60$, or $2/60$. Therefore, according to the county court's order, Edward Hinrichs' share is $9/60$ ($3/60$ plus $4/60$ plus $2/60$), or 15 percent, of Elizabeth Tjaden's estate.

As stated in Neb. Rev. Stat. § 30-2209(49) (Reissue 1985), a definitional section of the Nebraska Probate Code: "Testator means the maker of a will."

The cardinal rule concerning a decedent's will is the requirement that the intention of the testator shall be given effect, unless the maker of the will attempts to accomplish a purpose, or to make a disposition, contrary to some rule of law or public policy. *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987).

To arrive at a testator's intention expressed in a will, a court must examine the decedent's will in its entirety, consider and liberally interpret every provision in the will, employ the generally accepted literal and grammatical meaning of words used in the will, and assume that the maker of the will understood words stated in the will. *In re Estate of Walker, supra.*

When intention is expressed in clear language used in a testator's will, a court must give full force and effect to the testator's intention so expressed. See *Seybert v. Seybert*, 118 Neb. 246, 224 N.W. 1 (1929). Generally, a term of art used in reference to a devise or other testamentary disposition or provision has a technical but, nonetheless, clear meaning used in a decedent's will. See *In re Testamentary Trust of Criss*, 213

Neb. 379, 329 N.W.2d 842 (1983).

Paragraph FIFTH of Elizabeth Tjaden's will contains an antilapse provision applicable to "any beneficiary." In popular parlance, *any* usually means "all" or "every." See *McKay v. Equitable Life Assurance Society of U.S.*, 421 P.2d 166 (Wyo. 1966). See, also, *Mills v. State*, 53 Neb. 263, 73 N.W. 761 (1898). Without a doubt, Elizabeth intended that paragraph FIFTH of her will applied to all "beneficiaries" (devisees), including Dale Hinrichs and Mildred Margaret Cooke.

Neb. Rev. Stat. § 30-2306 (Reissue 1985) of the Nebraska Probate Code provides:

> If representation is called for by this code, the estate is divided into as many shares as there are surviving heirs in the nearest degree of kinship and deceased persons in the same degree who left issue who survive the decedent, each surviving heir in the nearest degree receiving one share and the share of each deceased person in the same degree being divided among his issue in the same manner.

"By right of representation" means a devisee is entitled to take or receive a share of an estate on a "per stirpes" basis. See, *Siders v. Siders*, 169 Mass. 523, 48 N.E. 277 (1897); *Bradlee v. Converse*, 318 Mass. 117, 60 N.E.2d 345 (1945); *Hungerpiller et al. v. Keller et al.*, 192 S.C. 329, 6 S.E.2d 741 (1940). G. Thompson, The Law of Wills § 317 at 476 (3d ed. 1947) states: "A distribution per stirpes is one in which the beneficiaries take proportionate shares of the share of the ancestor through whom they claim as his [or her] representative. As such representatives, they will be entitled to take just as much as such ancestor would have taken and no more."

As this court stated in *Gaughen v. Gaughen*, 172 Neb. 740, 745, 112 N.W.2d 285, 288 (1961):

> Distribution per stirpes is a division with reference to the intermediate course of descent from the ancestor. It gives the beneficiaries each a share in the property to be distributed, not necessarily equal, but the proper fraction of the fraction to which the person through whom he claims from the ancestor would have been entitled.

See, also, *Norway National Bank v. Oates*, 297 A.2d 898, 904 (Me. 1972) ("A per stirpal distribution intends that the more

remote descendant share in the distribution through the share of his ancestor").

Thus, in a per stirpes distribution, ordinarily applicable in an intestate's estate, there is a division of property among a class or group of distributees who take the share which a decedent would have taken if such decedent were alive, taking such share by the right of representing the decedent. See, *Buxton v. Noble*, 146 Kan. 671, 73 P.2d 43 (1937); *Shoch's Estate*, 271 Pa. 165, 114 A. 505 (1921); *Gee, for an Opinion*, 44 R.I. 132, 115 A. 716 (1922).

By the clear language of paragraph FIFTH of her will, Elizabeth Tjaden manifestly intended that the share of any devisee who died during Elizabeth's lifetime shall be distributed equally among Elizabeth's surviving siblings *and* each class of devisees comprised of the surviving child or children, as well as grandchildren, of Elizabeth's siblings who had failed to survive her. That class of devisees is entitled to share in Elizabeth's estate by representation, taking the share which would have been taken by Elizabeth's sibling if such sibling had survived Elizabeth. Therefore, Elizabeth Tjaden specified not only the extent of each distributive share of her estate but the basis on which the devisees received such distributive share in her estate. Under paragraph FIFTH of Elizabeth's will, each class or group of devisees was entitled to share equally in the distributive share of every deceased but childless "beneficiary" (devisee). Consequently, by Elizabeth's will, there might be as many separate classes of devisees as there were siblings who died before Elizabeth but had a surviving child, children, or grandchildren. In the actualities of this case, there are four such classes or groups of devisees, because there are four of Elizabeth's deceased siblings who have a surviving child, children, or grandchildren. Since no sibling has survived Elizabeth, only the various classes or groups of children or grandchildren of Elizabeth's deceased siblings remained as devisees designated in paragraph FIFTH of Elizabeth's will. As noted, there are four such classes or groups surviving Elizabeth—the children of Elizabeth's deceased brother, Meino; the children and grandchildren of her deceased brother, George; the children and grandchildren of Anna Lucht,

deceased; and Tena's surviving child, Edward Hinrichs. Under paragraph FIFTH of Elizabeth Tjaden's will, the individual shares of Dale Hinrichs and Mildred Margaret Cooke ($4/60$ to each, or $8/60$ combined) were distributable equally among those four separate classes or groups of devisees designated in paragraph FIFTH—$1/4$ of $8/60$, or $2/60$ ($1/30$), to each such class or group of devisees, which is the distribution correctly ordered by the county court. We note the comment by the county court: "There is no basis for distribution of the shares of Mildred Margaret Cooke and Dale H. Hinrichs to [Edward] Hinrichs." We construe that comment as the county court's observation that the separate or individual shares of Dale Hinrichs and Mildred Margaret Cooke are not totally, immediately, and directly distributable to Edward Hinrichs, but, rather, are eventually distributable to Edward Hinrichs in a per stirpes distribution, that is, by representation.

For the reasons set forth above, the district court's order is incorrect and is reversed with direction to reinstate and affirm the county court's order for distribution.

REVERSED AND REMANDED WITH DIRECTION.