IN RE ESTATE OF JANET MCCLYMONT HANNAN, DECEASED.
ELIZABETH H. HYMAN, PERSONAL REPRESENTATIVE OF THE
ESTATE OF JANET MCCLYMONT HANNAN, DECEASED, APPELLANT,
v. MARY ELIZABETH GLOVER, APPELLEE.

513 N.W.2d 339

Filed March 8, 1994.    No. A-92-534.

Larry R. Baumann, of Kelley, Scritsmier & Byrne, P.C., for appellant.

Patricia E. Dodson, of Dodson & Dodson Attorneys, for appellee.

CONNOLLY, HANNON, and WRIGHT, Judges.

HANNON, Judge.

Janet McClymont Hannan died on April 2, 1982, domiciled in Virginia. An ancillary probate proceeding was conducted in Phelps County for the real estate Hannan held in that county. In her will, Hannan devised the residuary of her estate to her children surviving her and to the "issue" of her deceased children per stirpes. The Nebraska real property was residual property. One of her children, a son, predeceased her. His only surviving descendant was an adopted daughter. Litigation in Virginia resulted in a determination that an adopted child was not issue of an adoptive parent under Virginia law. The Phelps County Court determined that Nebraska law controlled the definition of the term "issue" and that an adopted child is the issue of his or her adoptive parent. Therefore, the court held that the adopted child was entitled to receive the share of Nebraska real property that her adoptive father would have received had he been alive on the date of his mother's death. Hannan's estate, through its personal representative, appeals this decision.

We conclude the following: (1) Nebraska law does control the devise of all real property situated in Nebraska; (2) a cardinal principle of Nebraska law in interpreting wills is that the intent of the testator be obtained and followed; and (3) in making a will, a testator is more likely to subscribe to the domiciliary state's statutory or case law definition of a word, rather than to the definition provided under the law of the situs of the real property. As a result, and because there is no other evidence of Hannan's intent in the record provided to us, her intent should

be determined by the law in Virginia which existed at the time she made the will and at the time of her death. Accordingly, we reverse, and remand.

This matter came before the county court upon an application to distribute funds from the sale of the real property, funds which were placed in escrow pending an outcome of the litigation. The court found that the real property was sold in 1983 by an agreement among the parties and with court authority. The court found that Hannan's will was admitted to probate in the State of Virginia. The court also noted that she had five children and that one child, James M. Hannan, predeceased his mother and left only his adopted daughter, Mary Elizabeth Glover, as possible issue. Under the parties' agreement, one-fifth of the cash realized from the sale of the disputed real property was to be held in escrow until the litigation in Virginia was completed.

The county court observed that the Virginia Supreme Court had determined that the word "issue" in the last will and testament of the decedent did not include Glover because that term is limited to bloodline relationships. The county court then determined that Nebraska law controls and that Nebraska law provides that an adopted child is the issue of his or her adoptive parents. The court ordered the escrow funds distributed to Glover as a beneficiary under the will. The estate appealed to the district court, which affirmed the county court's judgment.

## ASSIGNMENTS OF ERROR

On its appeal to this court, the estate alleges that the county court erred (1) in finding that the Full Faith and Credit Clause of the U.S. Constitution does not apply absent statutory requirement, (2) in finding that the determination by the Virginia Supreme Court of the meaning of "issue" as used in the will of the decedent is not res judicata in Nebraska courts, (3) in finding that the intent of the testator did not control distribution of the proceeds of the sale of the real property, and (4) in finding that the adopted grandchild should receive a share of the estate contrary to the clear intent of the will. The central question presented by this appeal is, What law controls in

determining Hannan's intention? We will begin our discussion by reviewing the law of both Nebraska and Virginia on the subject of whether adopted persons are included within the meaning of the word "issue."

## ADOPTED CHILDREN AS ISSUE
## UNDER NEBRASKA LAW

Nebraska law regarding the rights of adopted children is provided under Neb. Rev. Stat. § 43-110 (Reissue 1988):

> After a decree of adoption is entered, the usual relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between such adopted child and the person or persons adopting such child and his, her or their kindred.

Neb. Rev. Stat. § 30-2209(23) (Cum. Supp. 1993) provides: "Issue of a person means all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definition of child and parent contained in the Nebraska Probate Code." Additionally, § 30-2209(3) states: "Child includes any individual entitled to take as a child under the code by intestate succession from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, or a grandchild or any more remote descendant." While the statute has been amended for other purposes, these definitions have remained essentially the same since at least 1978. Neb. Rev. Stat. § 30-2309 (Reissue 1989) provides, in significant part: "If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person, (1) an adopted person is the child of an adopting parent . . . ." Under this statute, an adopted child is therefore an individual entitled to take as a child, and therefore an adopted child is included as a lineal descendant of its adoptive parent under the statutory definition of "issue."

All of the several Nebraska cases considering the rights of adopted persons to inherit have reaffirmed Nebraska's public policy of recognizing that adopted children are entitled to every benefit that natural children realize in probate proceedings.

*Satterfield v. Bonyhady*, 233 Neb. 513, 446 N.W.2d 214 (1989); *In re Trust Estate of Darling*, 219 Neb. 705, 365 N.W.2d 821 (1985); *Neil v. Masterson*, 187 Neb. 364, 191 N.W.2d 448 (1971). In *In re Estate of Taylor*, 136 Neb. 227, 233-35, 285 N.W. 538, 541 (1939), the Supreme Court stated Nebraska's policy on this matter as follows:

> The thought back of the Nebraska decisions has been to give exactly the same rights and privileges to an adopted child which a natural child has. One of the rights of a natural child is to inherit from a grandparent through his parent. If the adopted child does not have that right, then it has been denied a right or privilege which the natural child has. . . .
>
> . . . .
>
> If a grandparent or an uncle, for instance, does not want the child thus adopted to share in his property, it is the easiest thing in the world to cut the child out by a paragraph in his last will. But if such a relative has not availed himself of the opportunity to cut out such person from his estate, it will be understood that the adopted child has the right of representation in exactly the same manner and to exactly the same extent as if such child had been begotten in lawful wedlock.

Accord *Neil, supra.*

■ We find that Nebraska statutory and case law provide that in the absence of specific testamentary directions to the contrary, an adopted child inherits from the antecedents of an adoptive parent to the same extent as do the adoptive parent's natural children. Under Nebraska law, the word "issue" includes adopted children for probate purposes. The appellant does not dispute that this is in Nebraska's law, but, instead, questions whether it should be applied in this case.

### ADOPTED CHILDREN AS ISSUE
### UNDER VIRGINIA LAW

As announced by the Supreme Court of Virginia, at the time of Hannan's death the rule in Virginia was that an adopted child was not included within the meaning of the word "issue." In the appeal of the primary probate proceeding, the Supreme Court

of Virginia not only decided that the word "issue" in Hannan's will did not include adopted children, but also reviewed Virginia law on that subject. In *Hyman v. Glover*, 232 Va. 140, 142-43, 348 S.E.2d 269, 271 (1986), that court said:

> Our analysis begins with an examination of the common law meaning of the word "issue." Since the infancy of the legal system in this Commonwealth the word "issue" has meant "heirs of the body" and has been distinguished from seemingly similar words such as "children." . . . At least since 1935 this Court has stated explicitly that the word "issue" does not include adopted children.

(Citations omitted.)

The Virginia court went on to give its historical analysis for the ruling, and then discussed why the various statutory provisions put forth by Glover did not change the longstanding law of Virginia on the subject. The decision was clearly based upon the common-law meaning of the word "issue."

It is interesting, and perhaps significant, to note that after the decision in *Hyman v. Glover* was announced, the Virginia Legislature passed another law mandating that the definition of the word "issue" does include adopted children. Va. Code Ann. § 64.1-71.1 (Michie 1991). However, when the will was executed and when Hannan died, Virginia law clearly provided that the word "issue" did not include adopted children.

## GENERAL DISCUSSION

The outcome of this case is dictated by four principal issues: (1) whether the courts of Nebraska must give full faith and credit to a decision of a Virginia court on the same matter involving the same estate; (2) whether the meaning and construction of a will is determined by the law of the situs of the real property or the law of the domicile of the decedent; (3) whether Nebraska law on reciprocity requires Nebraska courts to apply the law of Virginia; and (4) whether, under Nebraska law, the meaning of words or phrases used in a will is determined by their meaning in the state of the situs of the real property or in the state of the domicile of the decedent.

FULL FAITH AND CREDIT

■ The estate maintains that the decision of the Virginia Supreme Court is entitled to full faith and credit by the courts in Nebraska. In *Clarke v. Clarke*, 178 U.S. 186, 20 S. Ct. 873, 44 L. Ed. 1028 (1900), the U.S. Supreme Court applied the longstanding rule that the law of the state in which land is situated governs the transmission of that land by will or intestacy. In *Clarke*, a party maintained that the courts of Connecticut were bound by an interpretation placed on the will by a court in South Carolina because the decedent was domiciled in South Carolina. However, the Court in *Clarke* held that

> because the court of Connecticut applied the law of that State in determining the devolution of title to real estate there situated, thereby no violation of the constitutional requirement that full faith and credit must be given in one State to the judgments and decrees of the courts of another State, was brought about, as the decree of the South Carolina court, in the particular under consideration, was not entitled to be followed by the courts of Connecticut, by reason of a want of jurisdiction in the court of South Carolina over the particular subject-matter which was sought to be concluded in Connecticut by such decree.

178 U.S. at 195.

Earlier, the U.S. Supreme Court had proclaimed the same rule in *De Vaughn v. Hutchinson*, 165 U.S. 566, 570, 17 S. Ct. 461, 41 L. Ed. 827 (1897): "It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances."

■ These cases clearly hold that the courts of the domicile of a decedent do not have jurisdiction to control the devolution of real property held in another state. Therefore, a state in which real property is located is not required to give full faith and credit to a decision of another state regarding the probate of such real property.

■ Nebraska law adheres to the rule that the law of the state

where real property is situated governs exclusively the right of parties to real property and the methods of its transfer, including devise by will. See, *In re Estate of Schram*, 132 Neb. 268, 271 N.W. 694 (1937); *In re Heirship of Robinson*, 119 Neb. 285, 228 N.W. 852 (1930). Neither party directly contests this principle.

NEBRASKA'S LAW REGARDING RECIPROCITY

The estate argues that Neb. Rev. Stat. § 30-2432 (Reissue 1989) requires Nebraska courts to give effect to the determination of Virginia, the state where the decedent was domiciled at the time of her death. That statute provides:

> A final order of a court of another state, *which state has an applicable provision of law similar in reciprocal effect to this section*, determining testacy, the validity or construction of a will, made in a proceeding involving notice to and an opportunity for contest by all interested persons must be accepted as determinative by the courts of this state if it includes, or is based upon, a finding that the decedent was domiciled at his death in the state where the order was made.

(Emphasis supplied.)

When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning, so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992). The clear directive of § 30-2432 is that an order of another state shall be adopted by Nebraska only if the other state has a similar law for providing reciprocity of decisions made in Nebraska courts in probate proceedings.

A review of Virginia law reveals that Virginia has not enacted a reciprocal provision which honors final orders of another state regarding the construction of wills. Because Virginia fails to provide for reciprocity of decisions of other jurisdictions, Nebraska courts are not bound under § 30-2432 to adopt the orders of Virginia courts in the construction of wills.

NEBRASKA'S LAW REGARDING THE CONSTRUCTION OF WILLS

Having concluded that Nebraska law controls on the

construction of Hannan's will, we must now determine what Nebraska law provides in that regard.

The cardinal rule concerning a decedent's will is the requirement that the intention of the testator shall be given effect, unless the maker of the will attempts to accomplish a purpose, or to make a disposition, contrary to some rule of law or public policy. . . .

To arrive at a testator's intention expressed in a will, a court must examine the decedent's will in its entirety, consider and liberally interpret every provision in the will, employ the generally accepted literal and grammatical meaning of words used in the will, and assume that the maker of the will understood words stated in the will.

*In re Estate of Tjaden*, 225 Neb. 19, 26, 402 N.W.2d 288, 293 (1987). Accord *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987). "When language in a will is clear and unambiguous, construction of a will is unnecessary and impermissible." *Id.* at 818-19, 402 N.W.2d at 256. "Generally, a term of art used in reference to a devise or other testamentary disposition or provision has a technical but, nonetheless, clear meaning used in a decedent's will." *In re Estate of Tjaden*, 225 Neb. at 26, 402 N.W.2d at 293. The only question on the interpretation of Hannan's will is the meaning of the word "issue," a term of art, in relation to adopted children. More particularly, did she intend that word to have the meaning given it by Nebraska or Virginia law?

### DETERMINATION OF THE TESTATOR'S INTENTION

We cannot find a Nebraska case that discusses how the intention of a decedent is determined when a word or phrase used in a will has a different meaning in the law of the state of the situs of the real property than it has in the decedent's domicile. Other states have considered the question, however. Nebraska law provides that "[t]he object and purpose of the court is to carry out and enforce the true intention of the testator as shown by the will itself, in the light of attendant circumstances under which it was made." *Allemand v. Weaver*, 208 Neb. 618, 621, 305 N.W.2d 7, 9 (1981). The place where the decedent lived can be considered an attendant circumstance.

■ The authority on that specific issue is best brought into focus by reference to secondary authorities. In 16 Am. Jur. 2d *Conflict of Laws* § 72 at 112-13 (1979), it is stated that

> [a]s to wills of real property, the courts frequently state, in general terms and without qualification, that the construction, or construction and effect, of such a will is governed by the law of the state where the property is located. This proposition seems to be clearly applicable insofar as it pertains to the effect, or operative effect, of the language of a devise of land. . . .
>
> On the other hand, when the sole question is the ascertainment of the testator's intention from the language used in the will, or the sense in which certain words or phrases are used, and not their legal effect, they will be construed according to the lex domicilii in the case of real as well as personal property.

That authority goes on to state that the rationale for this exception to the general rule is that persons making the will must be presumed to have intended the meaning ascribed to the words to be that of the law of the domicile, with which they are familiar, rather than the law of the situs of real property.

■ The same authority states:

> Where a bequest or devise is made to a class—as, for instance, "heirs at law," "next of kin," "issue"—the membership of which varies with the laws of different jurisdictions, it is often necessary to resort to an extrinsic law in order to complete and render specific the testator's partially expressed intention. . . .
>
> In the absence of anything to indicate a contrary intention, the general rule is that the members of the class are to be ascertained by reference to the law of the testator's domicil . . . . The reason most often stated as supporting this rule is that a testator may reasonably be presumed to have been familiar with the law of his domicil, and unfamiliar with the law of other jurisdictions.

16 Am. Jur. 2d, *supra*, § 73 at 114-15.

In 95 C.J.S. *Wills* § 587 at 721-22 (1957), essentially the same rule is stated as follows:

> As a general rule, words used in a will must be construed according to their interpretation and meaning as defined by the law of the testator's domicile, in the absence of anything to indicate an intent to the contrary
> . . . .
>
> . . . .
> As a general rule, in the absence of anything in the will indicating an intent to the contrary, the members of a designated class of beneficiaries under a will are to be ascertained by reference to the laws of the testator's domicile at the time of his death . . . .

Essentially the same rule is stated in the Restatement (Second) Conflict of Laws § 240 (1971).

In *Applegate v. Brown*, 344 S.W.2d 13 (Mo. 1961), the Missouri Supreme Court recognized that the disposition of real property is governed by the law of the state where the real property is located. However, the court applied a Nebraska Supreme Court decision that interpreted the testator's intention on the basis that the construction of a will, for the purpose of ascertaining the testator's meaning and intention as expressed therein, is governed by the law of the testator's domicile. See, also, *Zombro v. Moffett*, 329 Mo. 137, 44 S.W.2d 149 (1931).

In *Keith v. Eaton*, 58 Kan. 732, 51 P. 271 (1897), the Kansas Supreme Court held that a testator who owned real property in both Kansas and Missouri and devised his real property by use of the words "heirs of the body" was presumed to have used that phrase in accordance with the laws of his domicile, Missouri. In making that decision, the Kansas Supreme Court stated:

> The law always gives effect to written instruments according to the intention of those who executed them. Its first object, therefore, is to ascertain the sense in which the words of an instrument were used. In this case the subject of interpretation is the will of William Eaton. It is not that of the statute, either of Kansas or of Missouri. . . . It is not a question as to which of these statutes shall govern in the transmission of the property in dispute. . . . The law of the state in which land is situated invariably governs its disposition. We may look to the statutes both of Kansas

and Missouri, as we may conceive William Eaton looked, to ascertain the meaning of the words of his will, but we cannot look to either of them as dispositive . . . .

. . . In the absence of a contrary meaning, to be gathered from the circumstances surrounding a testator or from the instrument as a whole, the sense of the words used by him is to be ascertained in the light of the law of his domicile. Presumptively, he is more familiar with that law than with the law of other jurisdictions. That is the law which is constantly with him, controlling his actions and defining his rights, and more naturally than any other law would be present to his mind in the drafting of an instrument dispository of his property.

. . . .

. . . The rule of the cases cited does not give extra-territorial effect to the laws of a foreign jurisdiction; it gives effect only to the intention of the testator.

*Id*. at 734-37, 51 P. at 272-73.

*In re Gernon's Estate*, 35 Misc. 2d 12, 226 N.Y.S.2d 940 (1962), it was held that the law of the state of the domicile of the decedent controls interpretation of a will. In *In re Will of Knickel*, 89 Ohio Law Abs. 135, 137, 185 N.E.2d 93, 95 (1961), an Ohio probate court stated: "It is elementary that the nature of an interest in land is determined by the law of the situs, but questions of interpretation and construction of wills are generally controlled by the law of the testator's domicile."

The above rule is the majority rule, and the cases cited in opposition to that rule are cases where the point is not considered, although perhaps the facts would justify its consideration, or are cases where the facts do not present the exact question. In many cases the court simply did not observe a distinction between the construction of a will and the determination of the meaning a nonresident decedent attached to a word.

In *Scofield v. Hadden*, 206 Iowa 597, 605, 220 N.W. 1, 4 (1928), the court stated that construction of a will concerning real property is "governed exclusively by the *lex rei sitae*," but that case concerned construction of a will, not the determination of the meaning of a word. In *Peet v. Peet*, 229 Ill.

341, 82 N.E. 376 (1907), the Illinois Supreme Court stated that local law—that is, the situs of the real property—governs in ascertaining the intention of the testator, but that case concerned the effect of local law when children were not mentioned in the will. Nevertheless, the court stated:

> In determining the true intent and meaning of a will the court will have recourse to the circumstances of the testator and of his family and affairs, and of other facts which it can be shown will in any way aid the court in the right interpretation of a testator's will. . . . Under this rule we have no doubt that if a will executed in a foreign country contains words or phrases which have a local or domiciliary meaning different from the meaning of the same words or phrases in this State, with which the testator is shown or presumed to have been acquainted, extrinsic evidence of such domiciliary meaning may be heard to enable the court to read the will with the same light under which it was written.

*Id*. at 351-52, 82 N.E. at 379.

We note that while the above authorities espouse the rule that a court should rely upon the law of the domicile to determine the intent of the testator in ascertaining the meaning of words used in a will, there are two limitations. First, this is merely a presumption to aid in the determination of the testator's intent, and it is controlling only in the absence of evidence of a contrary intent. In this case, however, there is no suggestion of evidence showing an opposite intent, and the parties do not argue other facts which would tend to show a contrary intent. The parties did not present a bill of exceptions.

▐ Second, the meaning ascribed by the law of the domicile must not be against the public policy of the state of the situs of the real property. Public policy in the sense used in this context is that

> "principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good. . . . The principles under which the freedom of contract or private dealings is restricted by law for the good of the community." Black's Law Dictionary (3d Ed.), p. 1374.

*United Seeds, Inc. v. Hoyt*, 168 Neb. 527, 531, 96 N.W.2d 404, 407 (1959). In this case, Nebraska's public policy, which was discussed earlier in this opinion, provides that adopted children be treated as natural children in the laws of descent and distribution, but Nebraska law also recognizes the right of grandparents, uncles, aunts, and others to disinherit adopted children the same as natural children. See *In re Estate of Taylor*, 136 Neb. 227, 285 N.W. 538 (1939). By this decision, we are merely using Virginia's definition of "issue" to learn Hannan's intent, that is, by her use of the word "issue," she conveyed her desire to exclude adopted grandchildren. If Hannan had intended otherwise, she could have chosen a word that did not exclude adopted children of her children. Nebraska has no public policy against disinheriting any descendant.

## CONCLUSION

The judgment is reversed, and the cause is remanded to the district court with direction to alter the order of the county court to provide that Glover shall not receive a share of the proceeds from the sale of the real property.

REVERSED AND REMANDED WITH DIRECTION.